[S. F. No. 1052. Department One.—August 2, 1898.]

JESSIE SHAFER, Appellant, v. H. LACY, Respondent.

PLEDGE OF GOODS BY BAILEE—CONVERSION.—Personal property intrusted to a bailee for safekeeping only, without any other *indicium* of ownership than the mere possession of it, cannot be pledged by the bailee; and the refusal of the pledgee to deliver the property to the rightful owner upon demand is a conversion thereof, for which an action of trover may be maintained by the owner to recover its value from the pledgee.

ID.—PROTECTION OF PLEDGEE—CONSTRUCTION OF CODE—LIMITATION TO PURPOSE OF TRANSFER.—In section 2991 of the Civil Code which protects a pledgee of one who has been allowed by the owner to assume the "apparent ownership" of personal property, "for the purpose of making a transfer of it," the words expressive of such purpose are words of limitation upon the power of the apparent owner to make the pledge; and that section has no application, where no apparent ownership is conferred for the purpose of sale or transfer, but the property is merely intrusted to another for safekeeping.

CHANGE OF JUDGMENT—ERRONEOUS CONCLUSIONS OF LAW—AMENDMENT—APPEAL.—Under section 663 of the Code of Civil Procedure, as established by the act of March 3, 1897, the superior court should vacate the judgment upon motion, when the conclusions of law are incorrect or erroneous, and not consistent with the findings of fact, and should enter up a different judgment sustained by the findings of fact, and should amend the conclusions of law accordingly; and when such motion is denied, the superior court may be directed to do so upon appeal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. C. B. Hebbard, Judge.

The facts are stated in the opinion.

F. J. Castelhun, for Appellant.

W. T. Baggett, for Respondent.

CHIPMAN, C.—Action to recover the value of certain jewelry, to wit, a diamond stud, an opal stud set with diamonds, and a diamond ring. The pleadings are verified, and the answer is merely a specific denial of the allegations of the complaint. Judgment was given for the recovery of the possession of the property upon payment to defendant of three hundred and forty-nine dollars and seventy-four cents, and costs of action twenty-one dollars. Plaintiff moved to set aside the judgment and to enter in lieu thereof an unconditional judgment in favor of plaintiff, on the ground that the conclusions of law were inconsistent with and not supported by the findings of fact. The motion was denied. The appeal is from the judgment and from the order denying plaintiff's said motion, and comes here on bill of exceptions.

The court found that plaintiff was the owner of the jewelry, being of the kind worn by men and of the value of four hundred dollars, and in 1890 "placed said property in the possession of one Dr. W. D. Johnson for safekeeping"; said Johnson, while in the possession of the property, in 1893, represented to defendant that he was the owner of the property and borrowed from defendant two hundred dollars, giving his notes therefor, and as security for the loan pledged with defendant the said property, without plaintiff's knowledge or consent; in the year 1894 plaintiff learned of this pledging, and in the year 1895 she demanded the return of the property from defendant, but he refused the return thereof, "and plaintiff took no further steps in the matter, except to request Dr. Johnson to return the jewelry, until after the death of said Johnson in December, 1895"; defendant is in possession of the property, "holding the same as a pledge to secure payment of said notes"; "about March 1, 1894, defendant removed the opal from said opal stud set with diamonds, and sold the same for thirty-five dollars, and applied the same on said notes"; no part of the sum so borrowed has been repaid except said sum of thirty-five dollars, and the amount now due is three hundred and forty-nine dollars and seventy-four cents; on January 1, 1895, plaintiff demanded of defendant the said jewelry, which was refused.

As conclusions of law the court found: "That plaintiff, in delivering said property to said Johnson as aforesaid, clothed him

with the apparent ownership of the same," and that "plaintiff is entitled to possession of the said jewelry upon the payment by her to said defendant" the amount due on said notes and costs of action.

If the property belonged to plaintiff, and defendant refused on demand of plaintiff to surrender its possession to her, he thereby converted it, and this action in the form of trover was proper.

Apparently, the court allowed defendant's claim against Johnson as a setoff to plaintiff's claim for the value of the property, and the judgment is for a return of the property upon payment of this setoff. In view of the pleadings and the fact that defendant converted the property, we cannot see upon what principle the court gave the judgment. We pass that question, however, to the more important one discussed in the briefs.

1. The finding is, that the property belonged to plaintiff and was delivered to Johnson for safekeeping. The uncontradicted evidence of plaintiff was that she "delivered it to Dr. W. D. Johnson and asked him to place it in his safe-deposit box." The defendant testified as follows: "I knew Dr. W. D. Johnson. On the second day of June, 1893, he called on me to borrow one hundred dollars; he offered as security the jewelry described in the complaint; he said it was his; that he had received it from Mrs. Shaeffer, the plaintiff, for services rendered the Shaeffer family. I lent him one hundred dollars on the jewelry, taking his note for the amount; the note bears interest at two per cent a month; he had the ring on his finger and the stud in his shirt; the next day he called and borrowed one hundred dollars additional with the same security." Plaintiff testified in rebuttal that Dr. Johnson "had never rendered her family any services; that he might have rendered her husband's family services, but that she understood that he had been well paid for them."

It is, I think, apparent from the findings of fact that the court accepted the evidence of plaintiff, for the finding is unqualified that plaintiff placed the property in Johnson's hands for safekeeping only. It must be held that the conclusion of law that "she clothed him with the apparent ownership of the same" is deduced from her evidence.

Section 2991 of the Civil Code provides as follows: "One who

has allowed another to assume the apparent ownership of property for the purpose of making any transfer of it cannot set up his own title to defeat a pledge of the property made by the other to a pledgee who received the property in good faith, in the ordinary course of business, and for value."

The phrase "for the purpose of making any transfer of it" we think must have been inserted as words of limitation upon the power to pledge by one having the "apparent ownership" of the property. The section would have a much broader meaning without than with these words. Formerly a factor to whom goods were consigned for sale could not pledge them as against the consignor. (*Wright v. Solomon*, 19 Cal. 64.) Under this section, however, as it now reads, one who has allowed another to assume the apparent ownership of property *for the purposes of sale or transfer* cannot recover from the pledgee of such other person, if the pledgee receives the property in good faith, in the ordinary course of business and for value. The rule of the code permits the owner to show that the property was not intrusted to the bailee or person assuming ownership, for the purposes of sale, but for transportation or temporary custody and the like objects. And so we understand the note of the code commissioners. Mr. Jones says: "Mere possession of a chattel is not title; and one taking a pledge of it is bound to satisfy himself that the pledgor is the owner; and if he relies solely upon the pledgor's possession, he takes the risk of having to surrender the property to the true owner." The example of a chattel put in the hands of a mechanic for repairs is given, where, by force of his possession, though lawful, he could not pledge the property. A case is cited by the author, which we have examined and find on all fours with the one at bar, holding that one who, having goods for safekeeping, pledges them with intent to convert the proceeds to his own use, in effect commits larceny, and the pledgee acquires no title as against the owner, although he deals with the pledgor in good faith. (Jones on Pledges, sec. 54. Citing *Gottlieb v. Hartman*, 3 Colo. 53.) In that case Mrs. Hartman deposited with one Morrison, the keeper of a restaurant, with whom she was staying, certain jewelry for safekeeping. Morrison pledged the property with Gottleib, a pawnbroker, to secure a

loan of money. Mrs. Hartman sued Gottleib in trover and recovered judgment, and her action was sustained.

Mr. Benjamin lays down the rule "that no man can sell goods and convey a valid title to them unless he be the owner, or lawfully represent the owner" (Benjamin on Sales, sec. 6); and Mr. Edwards says: "As no one can convey the title to another's property without his consent, so it is quite clear that, as a rule, he cannot pledge it or encumber it without some authority." (Edwards on Bailments, sec. 192.)

Respondent relies upon *McNeil v. Tenth Nat. Bank,* 46 N. Y. 325 (approved in *Barstow v. Savage etc. Co.,* 64 Cal. 388.) In that case, the plaintiff, being the owner of certain shares in a bank, had an account with certain stockbrokers relating to other stocks which they were carrying for him. To secure any balance which might be due on that account, plaintiff delivered the shares in dispute with a blank assignment and power of attorney to transfer them. These brokers pledged the shares without the knowledge of plaintiff and without actual authority, and they came into the hands of defendants. The opinion is valuable for its review of the cases upon the point. It will suffice to quote briefly to show that the case in no sense supports respondent's contention, nor does it sustain the rule deduced from it by him. I quote: "Simply intrusting the possession of a chattel to another as depositary, pledgee, or bailee, or even under a conditional executory contract of sale, is clearly insufficient to preclude the real owner from reclaiming his property in case of an unauthorized disposition of it by the person so intrusted. (*Ballard v. Burgett,* 40 N. Y. 314.) 'The mere possession of chattels, by whatever means acquired, *if there be no other evidence of property or authority to sell from the true owner* (italics by the learned judge), will not enable the possessor to give a good title.' (Per Denio, J., in *Covile v. Hill,* 4 Denio, 323.) But if the owner intrusts to another, not merely the possession of the property, but also written evidence, over his own signature, of title thereto and of unconditional power of disposition over it, the case is vastly different. There can be no occasion for the delivery of such documents, unless it is intended that they shall be used either at the pleasure of the depositary or under contingencies to arise."

The fact that Johnson represented that he owned the prop-

erty cannot change the fact that he did not own it; and because he was seen wearing the jewelry by the pledgee at the time the latter took it cannot affect plaintiff's right to it any more than can the fact found that it was jewelry such as men wear. The broad fact stands out as found in this case that Johnson took the property for safekeeping alone. There is no evidence that plaintiff knew he was representing it to be his own, or was wearing it or exercising any ownership over it. Upon principle we can see no difference between this case and that of the pledge or sale of stolen personal property, for when Johnson pledged it he converted it, and his pledge was the same as if he had stolen it and then pledged it, in which case an innocent purchaser or pledgee would take no title. (*Swim v. Wilson*, 90 Cal. 126.) Nor can we see any distinction in principle between this case and that of *Robinson v. Haas*, 40 Cal. 474, which was the case of certain sheep intrusted to one Rood to be kept upon terms agreed upon; or *Brewster v. Sime*, 42 Cal. 139, in which it was said: "The mere delivery of the possession of personal property does not, standing alone, constitute such an *indicium* of ownership as will bind the owner." (See, also, *Lowe v. Woods*, 100 Cal. 408, and cases there referred to.) We cannot discover upon what principle the trial court could reach the conclusion it did from the findings, nor can we find support for the judgment in the findings.

2. The plaintiff's motion to vacate the judgment and enter up a different judgment "upon findings of fact made by the court" is authorized by section 663 of the Code of Civil Procedure. (Act of March 3, 1897; Stats. 1897, p. 58.) The court may do this because of: "1. Incorrect or erroneous conclusions of law not consistent with or not supported by the findings of fact; and in such case when the judgment is set aside the conclusions of law shall be amended and corrected." We think that plaintiff on the findings of fact was entitled to judgment. The conclusion of law that "plaintiff, in delivering said property to said Johnson as aforesaid, clothed him with the apparent ownership of the same," we must construe to mean that, in the opinion of the trial court, this apparent ownership was given for the purpose of making a transfer of it, or at least with authority to transfer it. In that view the conclusion of the learned judge

was erroneous, and plaintiff's motion should have been granted.

We recommend that the cause be remanded, with directions to set aside and vacate the judgment entered in the action; to correct the conclusions of law in accordance with this opinion, and to enter judgment in favor of plaintiff for the sum of four hundred dollars, with legal interest from January 1, 1895, and costs of action.

Belcher, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the cause is remanded, with directions to set aside and vacate the judgment entered in the action; to correct the conclusions of law in accordance with this opinion, and to enter judgment in favor of plaintiff for the sum of four hundred dollars, with legal interest from January 1, 1895, and costs of action.

Harrison, J., Garoutte, J., Van Fleet, J.