JULIA POWERS, Respondent, v. PACIFIC DIESEL ENGINE COMPANY et al., Defendants; A. E. WHITE COMPANY et al., Appellants.

William Klein, Arthur H. Barendt and Redman & Alexander for Appellants.

Boswell F. King, H. M. Anthony and Leo R. Friedman for Respondent.

Heller, Ehrman, White & McAuliffe and Sloss & Ackerman, *Amici Curiae.*

SHENK, J.—This is an appeal from a judgment in favor of the plaintiff in an action to have it declared that she is the owner of certain stock certificates representing 328 shares in the Pacific Diesel Engine Company and to have said certificates returned to her. The defendant and appellant, C. J. Blumenthal, filed an answer and cross-complaint, claiming to be the purchaser in good faith and for value of the shares in question.

One of the stock certificates, representing 150 shares of stock in said company, was issued to the plaintiff on March 6, 1925, and the other, representing 178 shares, was issued to her on May 8, 1925. The plaintiff had subscribed for additional shares, but, as she was unable to pay for them, the subscription was canceled.

On or about May 9, 1925, two men called on the respondent at Benicia, California, and falsely represented to her that they were agents of the defendant Pacific Diesel Engine Company, and that they were sent from the company's office in San Francisco; that the company was taking up all of its stock for the purpose of correcting some mistakes on its books prior to paying dividends. One of them stated to the plaintiff that it was unfortunate that she could not take up the shares the subscription for which had been canceled, and suggested to her that she might then issue her check for those additional shares. She replied that she did not have the money. Whereupon one of the men further suggested to her that the certificates then in possession of the plaintiff be taken and used as security for the payment of the shares theretofore subscribed for. The other man stated that that would be a good idea. After relating the foregoing the plaintiff further testified: "So they had me sign the stock

to take on as security for the shares I had so I could get the benefit of the stock that was to be sold at a good price, and I was to make considerable on it.'' She then indorsed the stock certificates in blank and delivered them to the purported agents. One of them, named Morris, witnessed the plaintiff's signature to the assignments of the stock and power of attorney and the other, whose name was not Klein, gave her a receipt to which he signed the name ''M. Klein.''

On May 22, 1925, a broker by the name of Max Klein sold the certificates, indorsed in blank, to the appellant, C. J. Blumenthal, who paid therefor the sum of $1,049.96, which was at the rate of $3.20 a share, the current price on the open market at that time. The appellant sent the certificates to the defendant, Pacific Diesel Engine Company, for transfer on its books, but the transfer was prevented by a restraining order issued in this action. The defendant Pacific Diesel Engine Company deposited the certificates into court to await the outcome of the action.

The trial court specifically found that the appellant Blumenthal had no acquaintance with the respondent prior to the commencement of the action and ''had no knowledge whatsoever of any of the facts of fraud testified to by the plaintiff as having been perpetrated upon her by the two certain male persons whose identity is unknown to plaintiff,'' and that the appellant purchased said stock from Max Klein, a stock broker, in business in San Francisco at the time of said purchase, and paid to said broker the full market price of said stock as then sold on the open market.

The facts above related are undisputed and the question presented on the appeal is one of law. On the undisputed facts, who is to bear the loss occasioned by the fraudulent acts of the two unknown men, the respondent or the appellant Blumenthal?

It is common knowledge that as between the parties to the transaction the property in shares of stock customarily passes in the ordinary and regular course of trade by delivery of the certificate indorsed in blank by the person to whom the certificate purports on its face to have been issued. (See *Kohn* v. *Sacramento Elec. Gas & Ry. Co.*, 168 Cal. 1 [141 Pac. 626]; *Fowles* v. *National Bank of California*, 167 Cal. 653 [140 Pac. 271]; *Brittan* v. *Oakland Bank of Savings*, 124 Cal. 282 [71 Am. St. Rep. 58, 57 Pac. 84]; *Graves*

v. *Mono Lake etc. Mining Co.*, 81 Cal. 325 [22 Pac. 665];
*McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325 [7 Am. Rep. 341];
*Krouse* v. *Woodward*, 5 Cal. Unrep. 230 [42 Pac. 1085].) It
is commonly understood that the power of attorney so signed
in blank will be filled in with the name of the person to
whom the property in the shares will ultimately be trans-
ferred on the books of the corporation which issued the certifi-
cate. (*Baker* v. *Davie*, 211 Mass. 429 [37 L. R. A. (N. S.)
994, 97 N. E. 1094].) The fact, therefore, that the certifi-
cates here involved were offered in the regular course of
trade by a person who was not the holder named on the face
thereof, but with a blank power of attorney signed by said
named holder, was not alone sufficient to place the appellant
on notice that equities existed in favor of the original holder.
(*Fowles* v. *National Bank of California, supra*.)

In the absence of other evidence or of reasonable
inferences to be deduced therefrom, the finding of the trial
court that the defendant Blumenthal paid full value and had
no knowledge of said fraud was the only finding that could
have been made and is controlling upon us on this appeal
(see *Northwestern Portland Cement Co.* v. *Atlantic Portland
C. Co.*, 174 Cal. 308, 312 [163 Pac. 47]), and in the disposi-
tion of the appeal the appellant must be deemed to have been
a purchaser of the stock for value and without notice.

On this state of the record the appellant contends that the
judgment of the trial court is contrary to the findings and
erroneous in law. Certain fundamental principles are un-
questioned by counsel on both sides of this controversy, but
each urges the application of different doctrines to the facts.

It is not questioned that stock certificates, under the
law of this state, are not negotiable in the strict sense (*Geary
St. etc. R. R. Co.* v. *Bradbury Est. Co.*, 179 Cal. 46, 52 [175
Pac. 457]; *O'Dea* v. *Hollywood Cemetery Assn.*, 154 Cal. 53
[97 Pac. 1]; 6 Cal. Jur., p. 785), but that by the customs of
trade one of the attributes of negotiability, viz., the passing
of title to shares of stock by indorsement in blank and de-
livery of the certificate, has been given to such certificates.
(Civ. Code, sec. 324.) This, however, does not serve to make
them negotiable in the sense that equities in favor of the
owner are cut off by the delivery of a certificate to a *bona
fide* purchaser. (*Kohn* v. *Sacramento Elec. Gas & R. Co.*,
168 Cal. 8 [141 Pac. 626]; Civ. Code, sec. 1459.) No title

passes to a *bona fide* purchaser who receives delivery of a certificate of stock indorsed in blank and stolen by another without any fault or negligence on the part of the owner. In such case the latter retains title and may pursue his property. (*Swim* v. *Wilson*, 90 Cal. 126 [25 Am. St. Rep. 110, 13 L. R. A. 605, 27 Pac. 33]; *Barstow* v. *Savage Mining Co.*, 64 Cal. 388 [49 Am. Rep. 705, 1 Pac. 349]; *Sherwood* v. *Meadow Valley M. Co.*, 50 Cal. 412.)

■ Exceptions to the general rule that stock certificates indorsed in blank are non-negotiable are found, but such exceptions are usually provided for by statute. In the absence of a statute making such instruments negotiable, the declaration by courts that a purchaser for value and without notice of a stock certificate indorsed in blank obtains title thereto has not precluded an investigation into the equities. In proper cases, and this case is one, the equities should be examined in accordance with the familiar principles that "where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer" (Civ. Code, sec. 3543), and that where the true owner clothes another with the *indicia* of ownership of property and therefore the apparent authority to transfer title thereto, and innocent third parties are thereby led into dealing with such apparent owner, the true owner will be estopped to deny that the apparent authority is the real authority. (Code Civ. Proc., sec. 1962, subd. 3.) In such cases the equities are found to be in favor of the *bona fide* purchaser rather than in favor of the owner who has by his own conduct clothed another with the power to commit the fraud.

In the leading case of *McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325 [7 Am. Rep. 341], the owner of the indorsed stock certificates pledged them with his broker as security for a loan and the broker, without authority, pledged them with another for a larger sum, and the court announced the applicability of the equitable principle of estoppel in the following language: "It must be conceded that as a general rule, applicable to property other than negotiable securities, the vendor or pledger can convey no greater right or title than he has. But this is a truism, predicable of a simple transfer from one party to another where no other element intervenes. It does not interfere with the well-established principle that where

the true owner holds out another, or allows him to appear, as the owner of, or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance. . . . 'The mere possession of chattels, by whatever means acquired, *if there be no other evidence of property or authority to sell from the true owner,* will not enable the possessor to give a good title.' . . . But if the owner entrusts to another, not merely the possession of the property, but also written evidence, over his own signature, of title thereto, and of an unconditional power of disposition over it, the case is vastly different. There can be no occasion for the delivery of such documents unless it is intended that they shall be used, either at the pleasure of the depositary or under contingencies to arise. If the conditions upon which this apparent right of control is to be exercised are not expressed on the face of the instrument, but remain in confidence between the owner and the depositary, the case cannot be distinguished in principle from that of an agent who receives secret instructions qualifying or restricting an apparently absolute power.'' This rule has been approved and applied in this state. (*Northwestern Portland Cement Co.* v. *Atlantic P. C. Co.,* 174 Cal. 308 [163 Pac. 47]; *Fowles* v. *National Bank of California,* 167 Cal. 653 [140 Pac. 271]; *Brittan* v. *Oakland Bank of Savings,* 124 Cal. 282 [71 Am. St. Rep. 58, 57 Pac. 84]; *Arnold* v. *Johnson,* 66 Cal. 402 [5 Pac. 796]; *Rapp* v. *Fred W. Hauger Motors Co.,* 77 Cal. App. 417 [246 Pac. 1067]. See, also, *Shafer* v. *Lacy,* 121 Cal. 574 [54 Pac. 72], and *Barstow* v. *Savage Min. Co.,* 64 Cal. 388 [49 Am. Rep. 705, 1 Pac. 349], where the language of *McNeil* v. *Tenth Nat. Bank, supra,* is quoted and approved.) ▮ It is not questioned that the indorsement of a stock certificate in blank is an *indicium* of ownership with which the possessor thereof must be clothed by the owner before his act in relation thereto will operate as an estoppel against him. And it was held in

*Northwestern P. C. Co.* v. *Atlantic P. C. Co., supra,* that the entry of the transfer on the corporate books is not essential to a legal transfer of the title to the stock and the rights thereunder upon a sale or pledge by delivery of the certificate duly indorsed. The appellant contends that the principles of *McNeil* v. *Tenth Nat. Bank, supra,* are applicable to the facts of the present case, while the respondent insists that, because the persons to whom she gave possession of the indorsed stock certificates were, under the facts adduced, guilty of larceny by trick and device, the respondent has not clothed them with *indicia* of ownership and the rules governing stolen non-negotiable instruments are controlling.

We have fully considered the arguments presented and the authorities cited by counsel for both sides and by *amici curiae,* and feel constrained to agree with the contentions of the defendant. Without reviewing the authorities in detail, each of the cases relied on by the respondent is distinguishable on the facts from the present case, and in none of them was the owner of the certificate so indorsed in blank guilty of any negligence which was the proximate cause of the loss, nor did he voluntarily part with the possession of such certificates for any purpose and thus by his own act place it within the power of another to hold himself out as the true owner. (See *Shafer* v. *Lacy,* 121 Cal. 574 [54 Pac. 72], involving jewelry, where there was no *indicium* of ownership beyond mere possession; *Barslow* v. *Savage,* 64 Cal. 388 [49 Am. Rep. 705, 1 Pac. 349], theft; *Sherwood* v. *Meadow Valley Min. Co.,* 50 Cal. 412, loss of certificate; *Swim* v. *Wilson,* 90 Cal. 126, 129 [25 Am. St. Rep. 110, 13 L. R. A. 605, 27 Pac. 33], theft; *Kohn* v. *Sacramento Gas & Ry. Co.,* 168 Cal. 1 [141 Pac. 626], theft; *The Yamato* v. *Bank of Southern California,* 170 Cal. 351 [149 Pac. 826], theft; *Bryant* v. *Century Bank of City of New York,* 155 N. Y. Supp. 1010, involving checks, wherein it was held that the bank was justified in refusing payment where it had notice that they were obtained by fraud; *Soltau* v. *Gerdau,* 119 N. Y. 380 [16 Am. St. Rep. 843, 23 N. E. 864], theft of goods which the thief stored in a warehouse and had warehouse receipts issued to himself.) In *Reichard* v. *Hutton & Co.,* 158 App. Div. 122 [142 N. Y. Supp. 935], the defendant was held to respond in damages for conversion. The

judgment was affirmed on the theory that, on the facts, the defendant had notice of the opportunity which its agent had to perpetrate a fraud on the plaintiff as to one certificate and as to the others that the defendants participated in the transaction to such an extent that it would not be heard to say that it did not hold its fraudulent agent out as its representative to do what was actually accomplished. The effect of that case is in harmony with the principles approved herein, and any general language in the opinion which might be construed in favor of the respondent herein was unnecessary to the decision and not in accordance with the law as we find it to be.

The respondent attempts to make a distinction between the present case and cases like *McNeil* v. *Tenth Nat. Bank, supra,* and the cases following it, on the ground that while the facts of the present case may seem to be within the language of the cases relied on by the appellant, yet in the present case there was no intention on the part of the respondent to part with any property in the shares, while in the other cases the owner intended to part with some property interest therein. This is answered first by the fact that the law creates the estoppel, not because of any intention which the owner has to part with some property in the certificates, but from the conduct of the owner in clothing another with all the *indicia* of ownership, which amounts to a representation by him to innocent third parties that the person in possession has complete power of disposition. It is pointed out that the party against whom an estoppel may operate must have intended others to act upon his representation; but intent, in the sense urged by respondent, is not an element. "It is sufficient if the acts, representations or silence relied on are of such a character as to induce a reasonable and prudent man to believe that they were meant to be acted on." (21 C. J., p. 1121, and cases cited.)

The second answer is that the principle of estoppel has been applied against the original owner in cases which are not distinguishable on the facts from the present case. *Russell* v. *American Bell Tel. Co.,* 180 Mass. 467 [62 N. E. 751], was a case involving the doctrine of estoppel on a similar state of facts. In that case the owner of a certificate indorsed in blank entrusted it to a fraudulent agent for the purpose of surrendering it to the company in order to

obtain a new certificate. (See *National Safe Deposit etc. Co.* v. *Hibbs*, 229 U. S. 391, 395 [57 L. Ed. 1241, 33 Sup. Ct. Rep. 818, see, also, Rose's U. S. Notes].) The purported agent pledged the stock for his own purposes to the defendant, a *bona fide* pledgee. The same distinction attempted to be made by the respondent here was urged in that case, i. e., that only the possession, not the property, passed to the agent and that "as the possession was obtained by fraud, it was obtained by larceny in judgment of law." The contention was disposed of by Mr. Justice Holmes, then chief justice of Massachusetts, speaking for the court, in the following language:

"The qualification of the rule as not applying when the instrument is stolen, is not based upon the name of the agent's crime but upon the fact that in the ordinary and typical case of theft the owner has not intrusted the agent with the document and therefore is not considered to have done enough to be estopped as against a purchaser in good faith. He certainly has not done enough if the estoppel is based upon the principle that when one of two innocent persons is to suffer the sufferer should be the one whose confidence puts into the hands of the wrongdoer the means of doing the wrong. But in a case like the present the agent has been intrusted with the converted property, and it is totally immaterial whether by a stretch which extends larceny beyond the true field of trespass, his wrong has been brought within the criminal law or not. The ground of the estoppel is present and the estoppel arises. The distinction is not new. On the one side are cases like *Knox* v. *Eden Musee American Co.*, 148 N. Y. 441 [51 Am. St. Rep. 700, 31 L. R. A. 779, 42 N. E. 988], where an agent or servant simply had access to a document remaining in the possession of the owner; on the other, cases like *Appeal of Pennsylvania R. Co.*, 86 Pa. St. 80, where possession is intrusted to the agent for one purpose and he uses it for another. It cannot matter in the latter class that the agent intended the fraud from the outset." A judgment for the plaintiff in that case was reversed. The reasoning and principle of the case has been followed in *Baker* v. *Davie*, 211 Mass. 429 [37 L. R. A. (N. S.) 944, 97 N. E. 1094], where a similar state of facts existed, and also has been approved and similarly applied by the supreme court of the United States in *National Safe Deposit Co.* v.

*Hibbs*, 229 U. S. 391 [57 L. Ed. 1241, 33 Sup. Ct. Rep. 818, see, also, Rose's U. S. Notes]. In the latter case, Mr. Justice Day, delivering the opinion of the court, added: "In such case we think the principles which underlie equitable estoppel place the loss upon him whose misplaced confidence has made the wrong possible." The case of *Russell* v. *American Bell Tel. Co., supra,* has been approved and quoted from in *Kohn* v. *Sacramento Elec., Gas & Ry. Co., supra,* wherein this court distinguished cases of stolen non-negotiable instruments transferable by delivery where possession was entrusted to the thief from cases where possession was obtained by the thief without the consent or fault of the person in possession, although that was a case of the latter type. In *Arnold* v. *Johnson, supra,* which follows *McNeil* v. *Tenth Nat. Bank, supra,* and distinguishes the facts of the case before it from the case of *Barstow* v. *Savage Mining Co., supra,* on the ground that, unlike the latter case, the certificate was voluntarily delivered, the owner had delivered certificates indorsed in blank for a purpose other than a transfer of any property therein, to wit, for the purpose only of exchanging it for a new certificate. The case of *Fowles* v. *National Bank of California,* 167 Cal. 653 [140 Pac. 271], discusses the cases of *McNeil* v. *Tenth Nat. Bank, supra, Barstow* v. *Savage,* and *Arnold* v. *Johnson, supra,* and states: "But where such person has not only the possession, but also written *indicia* of ownership, with which he has been *voluntarily* furnished by the true owner, the principle (of estoppel) is applicable."

In addition to the foregoing considerations of law which are applicable to a statement of the facts most favorable to the respondent, i. e., that the certificates were to be taken by the two men for purposes of the correction of the corporation's records, there is a consideration of fact appearing by the testimony of the respondent herself which shows beyond question that she intended that the certificates should be taken and used as security to the end that the stock represented by the canceled subscription might be acquired by her or the subscription reinstated. In this respect the record discloses an intention on her part to constitute the two men her agents for that purpose and thereby to part with some property interest in the shares for purposes of security. This case on all of its facts is therefore farther removed

from the application of the law as contended for by the respondent.

The case of *Popp* v. *Exchange Bank*, 189 Cal. 296 [208 Pac. 113], relied on by the respondent, follows the general rule that the seller of non-negotiable paper can transfer to the buyer no better title than he has himself, but that case is distinguishable from the case at bar on the facts in this, that it did not appear in that case that the true owners of the bonds had by any affirmative act, assuming that they had the legal capacity to act, placed the fraudulent pledgors in a position to mislead the innocent pledgee by evidence on the face of the instruments or otherwise into a belief that the pledgors had a right to pledge the bonds. That case is in line with the rule that the mere possession of non-negotiable paper by a fraudulent seller or pledgor is not, in itself, sufficient to constitute fault or negligence on the part of the true owner. There was therefore in the Popp case no necessity or occasion to apply the equitable principles which must be applied in this case.

On the record before us the equities of the parties are not equal. The appellant is in the position of an innocent third party who has parted with full value for the stock without notice of the fraud perpetrated on the respondent. On the other hand the respondent was at fault in misplacing her confidence in the perpetrators of the fraud and by the affirmative act of placing her signature on the assignment and power of attorney attached to the certificates enabling the wrongdoers to mislead an innocent third party to his detriment. The last section of the Civil Code and section 1962, subdivision 3, of the Code of Civil Procedure are therefore applicable to the facts in the case and prevent a recovery by respondent on the record before us.

The respondent is a woman of the age of seventy years, but it is not shown nor is it claimed that she was laboring under any infirmity or disability in the transaction. It appears that she fully appreciated what she was doing when she entrusted her indorsed stock certificates to the "confidence" men. She was imposed upon and of course had a cause of action against those who defrauded her. It may be assumed that such a right of action would be of doubtful fruition, but we may not be led to announce unsound principles of law because of the misfortune of the respondent.

We therefore conclude that on the findings of the court judgment should have been entered for the appellant.

The judgment is reversed.

Preston, J., Waste, C. J., Langdon, J., Seawell, J., Richards, J., and Curtis, J., concurred.

[S. F. No. 13032. In Bank.—January 30, 1929.]