[Civ. No. 8854. Second Appellate District, Division One.—April 29, 1935.]

CALIFORNIA JEWELRY COMPANY (a Corporation), Appellant, v. PROVIDENT LOAN ASSOCIATION (a Copartnership) et al., Respondents.

MacFarland & Ready, J. H. Ready and John R. Layng for Appellant.

Freidlander & Gray for Respondents.

SHINN, J., *pro tem.*—In this action of claim and delivery to recover possession of one emerald-cut diamond ring and one emerald-cut loose diamond, or their value, defendants had judgment and plaintiff appeals.

The case arose out of the following facts: Plaintiff was in the wholesale jewelry business at San Francisco and Los Angeles. Defendant Provident Loan Association was in the business of loaning money upon pledges of personal property. One Kaplan was a trafficker in jewelry and precious stones. He received the property from plaintiff and on the same day pledged the same to defendant.

The court made the following findings of fact, among others:

"IV.

"That on April 27, 1931, Ernest L. Kaplan obtained from the plaintiff the personal property specifically described in plaintiff's complaint, upon the representation that he desired to exhibit the same to a third party, and then and there, and prior to the delivery of said property, requested the plaintiff to deliver said property to him 'upon memorandum', and pursuant to said request, the plaintiff prepared, and the said Ernest L. Kaplan executed, prior to the delivery of said personal property, the following agreement and receipt for the same, in writing, in words and figures as follows:

" 'Kindly Return Goods by Registered Mail

Packages are covered by Insurance only if properly sealed
Established 1859
CALIFORNIA JEWELRY COMPANY, Incorporated
No. 65,275            Diamonds and other precious stones
MEMORANDUM       San Francisco, Cal. 4/27/1931
                          704 Market Street
                          To E. L. Kaplan

The goods must be
reported within ——————————— days
" 'No retail—all memorandum goods are to be paid for—
Net Cash. The goods described and valued as below are

sent to you for examination and remain our property. Sale takes effect only from date of our approval of your selection and until. then the goods are to be held subject to our order, or returned to us on demand.

| H G C | 1 E C | Ring 2.57 | for | 2,000.00 |
| 1495 | 1 E C | " 2.71 | @ | 700.00 P C |

" 'E. L. KAPLAN'

"That said delivery was not made solely upon such written agreement, but upon the further expressed oral agreement that the said Kaplan might negotiate a sale of the above described personal property.

"V.

"That by reason of said representation, and of the request of the said Ernest L. Kaplan, the plaintiff then and there delivered said personal property to the said Ernest L. Kaplan.

"VI.

"That on April 27, 1931, the plaintiff California Jewelry Company allowed the said Ernest L. Kaplan to assume the apparent ownership of the above described property for the purpose of making a transfer of such property."

The court also found that the defendant pledgee loaned Kaplan one thousand three hundred and fifty dollars ($1,350), and received the property in pledge as security. Upon these facts the court held that the pledgee had the right of possession until the loan was repaid, basing this ruling upon section 2991 of the Civil Code, which reads as follows:

"One who has allowed another to assume the apparent ownership of property for the purpose of making any transfer of it, cannot set up his own title, to defeat a pledge of the property, made by the other, to a pledgee who received the property in good faith, in the ordinary course of business, and for value."

The judgment of the court obviously rests upon the finding that there was an oral agreement between plaintiff and Kaplan under which the latter was authorized to "negotiate" a sale of the property, and the finding that Kaplan was allowed to assume apparent ownership of the property for the purpose of making a transfer. The first of these findings is ambiguous and the second is a pure conclusion of law. We do not know what the court intended by finding that Kaplan might negotiate a sale of the property—whether

it was intended to find that he could find a customer and agree on terms of the sale, or that he had the right to make a sale and transfer title. We will pass this ambiguity and assume that the court found that there was an oral agreement made at the same time as the written agreement under which Kaplan was given the right to make transfer of title to a purchaser. Oral testimony was introduced over the objection of plaintiff as to the custom followed by plaintiff in placing jewelry in the hands of brokers under written memoranda such as was used in the transaction in question. Plaintiff's employees were examined and cross-examined as to their practices in completing sales with or through brokers who received goods on memorandum. Evidence was also introduced of previous transactions between plaintiff and Kaplan in which the latter received jewelry on memorandum and afterwards made purchases thereof, and of other transactions in which he had received jewelry on memorandum and had returned the same without making any purchases. Testimony was also received as to the conversations between Kaplan and the manager of plaintiff's business, in which Kaplan stated in speaking of the diamonds he was receiving: "Maybe I can sell one." This statement by Kaplan is the only one made by either of the parties at the time the writing was signed which could possibly be construed as an agreement in addition to or differing from the terms of the written agreement. The only other evidence in the record which would tend in any way to support the finding that there was an oral agreement as well as a written one, is the evidence of custom to which we have referred. It is unnecessary to set forth this evidence in detail. It is relied upon by respondent to support the finding that Kaplan had authority to transfer title to the property. This evidence had a tendency to support the finding; whether it was sufficient for that purpose is unnecessary for us to decide.

We are of the opinion that evidence of custom or usage was inadmissible to prove any contract between the parties, and we are also of the opinion that evidence tending to show any oral contract between plaintiff and Kaplan was likewise inadmissible for the purpose of contradicting or adding to the terms of the written agreement.

The writing signed only by Kaplan and delivered by him to and accepted by plaintiff became their contract.

Plaintiff's signature thereon was not necessary. (6 Cal. Jur. 233, and cases cited.)

Under section 1870, subdivision 12, of the Code of Civil Procedure, evidence of usage to explain a contract is admissible only when the meaning is not otherwise plain, but never except as an instrument of interpretation. The contract in question is not ambiguous. It clearly provides that the property was given to Kaplan for the purpose of examination, that title was to remain in the jewelry company, that the property was to be returned on demand and that a sale would only take place if Kaplan selected property which he desired to purchase and the jewelry company approved his selection. The writing very clearly sets forth the terms of a definite understanding and agreement. The form of writing is evidently one in general use by jewelers. Agreements in almost the same language were involved in several cases to which we will hereafter refer. Extrinsic evidence was not required for its interpretation and therefore was inadmissible. It will be noted that the court does not find the contract to be ambiguous, nor is there any finding that the parties contracted with reference to any custom in the trade or what such custom may have been. The court evidently proceeded upon the theory that evidence of custom and usage might be received to establish a contract essentially different from the written contract. We do not know of any rule of evidence which supports such a theory. Section 1856 of the Code of Civil Procedure reads in part as follows:

"When the terms of an agreement have been reduced to writing by the parties it is to be considered as containing all those terms and therefore, there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing except in the following cases," etc. The exceptions enumerated in the section are such as mistake, fraud, ambiguity, etc., and, of course, do not include cases in which it is sought to contradict the written agreement by evidence of a contemporaneous oral agreement.

It must be conceded that the writing between the parties is entirely inconsistent with the idea that Kaplan had the right or authority to sell and convey title to the property of the plaintiff. The provisions of the written agreement are directly to the contrary. The contract provides for noth-

ing except a proposed sale to Kaplan. It contains nothing indicating an understanding that Kaplan was plaintiff's agent to sell the property to a third party. If it be assumed that it was customary for brokers receiving jewelry on memorandum to find customers before completing their purchases, such facts would be inadmissible to vary the terms of the contract. Even if it be assumed that it was customary to allow a broker in such cases to transfer title, evidence of that fact could not be received to add a new provision to the contract. ██ Parol evidence is not admissible to add new terms to a contract which appears on its face to be the complete agreement of the parties even though it is silent thereon. (*Harrison* v. *McCormick*, 89 Cal. 327 [26 Pac. 830, 23 Am. St. Rep. 469]; *Beall* v. *Fisher*, 95 Cal. 568 [30 Pac. 773].) Evidence of surrounding circumstances, while admissible for purposes of interpretation, cannot be given the effect of adding a new term to a written agreement. (*Luitweiler Pumping Engine Co.* v. *Ukiah Water & Improvement Co.*, 16 Cal. App. 198 [116 Pac. 707, 712].)

██ As between plaintiff and Kaplan, all of the evidence of custom and of the alleged oral agreement would have been incompetent. As between plaintiff and Provident Loan Association, the rule is no different. ██ The loan association is the successor in interest of Kaplan within the meaning of section 1856 of the Code of Civil Procedure. If Kaplan acquired no title from plaintiff he had none to convey to a third party. If he had no authority to transfer title his pledge to the defendant company affords the latter no protection under section 2991, Civil Code. If he held possession for the purpose of examination as the contract provides, he was a mere custodian and his possession of the property was not sufficient evidence of title to justify reliance thereon by a purchaser or pledgee. (*Shafer* v. *Lacy*, 121 Cal. 574 [54 Pac. 72]; *Akron Cereal Co.* v. *First Nat. Bank*, 3 Cal. App. 198 [84 Pac. 778]; *E. Bastheim Co.* v. *Schultz et al.*, 46 Cal. App. 24 [188 Pac. 841]; *Wright* v. *Solomon*, 19 Cal. 64 [79 Am. Dec. 196]; *Knapp* v. *Lyman*, 44 Cal. App. 283 [186 Pac. 385].)

In *Shafer* v. *Lacy, supra,* it was held that section 2991 of the Civil Code is a limitation upon the right of one having possession to make a pledge of the property which will defeat the right of the owner, and in speaking of a pledge of jewelry by one who held the property for safekeeping, the

court said: "Upon principle, we can see no difference between this case and that of the pledge or sale of stolen personal property; for, when Johnson pledged it, he converted it, and his pledge was the same as if he had stolen it, and then pledged it, in which case an innocent purchaser or pledgee would take no title." (Citing *Swim* v. *Wilson*, 90 Cal. 126 [27 Pac. 33, 25 Am. St. Rep. 110, 13 L. R. A. 605].)

In *Akron Cereal Co.* v. *First Nat. Bank, supra,* it was said, in denying the right of a pledgee to protection under section 2991, where goods had been received in pledge from the owner's agent, "Owners of goods for commercial and other purposes must frequently intrust others with the possession of them, and the affairs of men could not be conducted unless they could do so with safety. So long as the possession of the goods is not accompanied with some *indicia* of ownership, or of right to sell, the possessor has no more power to divest the owner of his title or to affect it than a mere thief. (*Soltau* v. *Gerdau,* 119 N. Y. 380 [23 N. E. 864, 16 Am. St. Rep. 843].) . . . ; but for the purpose of protecting a pledgee who deals with one who is in possession of property, and takes it from him in pledge under the belief that he is the owner thereof, the legislature has enacted the above section of the code; but by the express terms of the section it has limited the grounds of such belief on the part of the pledgee to cases in which the real owner of the property has not only 'allowed' the pledgor to assume its apparent ownership, but has done so 'for the purpose of making any transfer' of it. The pledgee must show the existence of these conditions as well as good faith on his part before he can claim a title superior to that of the original owner."

In *E. Bastheim Co.* v. *Schultz et al., supra,* property had been delivered to two persons upon the representation that they desired to exhibit the same to a third party for the purpose of inspection, but who instead pledged it as security for a loan. A memorandum had been issued similar to the one in the present case. The court said: "Before making a further analysis of the findings, the well-established rule may be adverted to, to-wit, that a person purchasing or receiving in pledge personal property from another is bound to ascertain what the title and right is of the proposed vendor or pledgor, and that mere possession alone, at best, only furnishes *prima facie* evidence of ownership. The rule is,

by the code, made subject to one modification, and that is that where an owner allows another to assume the apparent ownership of property 'for the purpose of making any transfer of it' (Civ. Code, sec. 2991), he cannot defeat the right of a pledgee who, in good faith, has made advances relying upon the apparent ownership of the possessor."

A case directly in point is *Green* v. *Wachs*, 254 N. Y. 437 [173 N. E. 575]. In that case the jewelry was turned over to a dealer for the purpose of sale under a memorandum reading in part: "These goods are sent for your inspection . . . sale takes effect only from date of approval of your selection." The writing was held to be unambiguous and parol evidence as to custom previously followed between the owner and the dealer was held inadmissible. This case follows earlier New York cases, involving similar contracts, and the reasoning of the court is, we think, conclusive.

Respondent relies upon *Hambright & Walsh Co.* v. *Provident Pledge Corp.*, 25 Cal. App. 600 [144 Pac. 971], but this case is not in point. No question of the admissibility of parol evidence to vary the terms of the written agreement was involved or decided in that case.

It is clear from the foregoing authorities that the mere possession of the property by Kaplan cannot be relied upon by defendant in support of its claim as pledgee. The defendant's rights are dependent entirely upon the agreement between plaintiff and Kaplan. Defendant claims no title or right except through Kaplan. If the latter had the right to sell the property and to transfer title, a purchaser from him would take good title. Section 2991 extends the same right to a pledgee. But if Kaplan was a mere custodian, a purchaser from him would take no title. A pledgee can stand in no better position.

There was, therefore, no competent evidence of any contract upon which defendant may rely except that furnished by the written agreement. This being true, the case of *E. Bastheim Co.* v. *Schultz et al., supra,* is decisive. In that case, under an agreement substantially the same as the one here involved, it was held that the custodian had no authority to make a transfer of title.

Judgment is reversed.

Houser, Acting P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 25, 1935, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 27, 1935.

Shenk, J., voted for a hearing.