*919 OPINION.
Smith:
In this proceeding the petitioner contends that the dividends of $611,825.76 and $5,547.50 received by it from the Delaware corporation on June 1 and June 6, 1928, respectively, constituted “taxable dividends” received by it from the Delaware corporation, within the meaning of section 112 (c) (2) of the Revenue Act of 1928,[1] which it is entitled to deduct from its gross income under section 23 (p). It also contends that any gain realized by it from the exchange of shares of stock of the Delaware corporation for shares of stock of the Nevada corporation on June 6 is not to be recognized *920 for tax purposes in accordance with section 112 (b) (3) of the Revenue Act of 1928.[1] We shall first consider the reorganization issue.
The petitioner submits:
(1) There was a statutory “reorganization [of the Delaware corporation]”;
(2) There was an exchange by petitioner of stock of old United [Delaware corporation] for stock of new United [Nevada corporation] in pursuance of a plan of reorganization which exempted such exchange from taxation under the provisions of Section 112 (b) (8).
(3) The distributions of cash and accounts receivable were made in pursuance of the plan of reorganization and had the effect of the distribution of a taxable dividend within the meaning of Section 112 (c) (2).
The basis for the respondent’s objection to the petitioner’s contentions is that there was no reorganization of the Delaware corporation ; that it was contemplated prior to May 11,1928, that the Nevada corporation would be organized and that the Delaware corporation and the California corporation would transfer assets to the Nevada corporation in exchange for shares of stock to be issued by that corporation; that such reorganization was not completed until on or about June 21,1928, at which time neither the Delaware corporation nor its shareholders had control of the Nevada corporation.
Section 112 (i) of the Revenue Act of 1928 provides as follows:
(i) Definition of reorganization.—As used in this section and sections 113 and 115—
(1) The term “reorganization” means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its *921 stockholders or both are in control of the corporation to which the assets are transferred * * *
(2) The term “a party to a reorganization” includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.
We think that the evidence clearly shows that there was a reorganization of the Delaware corporation within the meaning of both clause (A) and clause (B) of section 112 (i). The Delaware corporation transferred all of its operative assets to the Nevada corporation in exchange for all of the shares of stock of the Nevada corporation. Neither the California corporation nor the Oliver interests were parties to the reorganization. The Delaware corporation remained in control of the Nevada corporation until it was dissolved, when the control passed to the petitioner, which then remained in control until June 27, 1928. This constituted a reorganization of the Delaware corporation under both clause (A) and clause (B). See Gross v. Commissioner, 88 Fed. (2d) 567; Helvering v. Minnesota Tea Co., 296 U. S. 378; Nelson Co. v. Helvering, 296 U. S. 374; Helvering v. Watts, 296 U. S. 387; Helvering v. Winston Brothers Co., 76 Fed. (2d) 381; J. M. Harrison, Inc., 30 B. T. A. 455.
Under the plan of reorganization the Delaware corporation was to distribute all of its assets to its stockholders. In pursuance of that plan it declared a dividend on May 17 of $64.96 per share payable to its stockholders of record on June 1. After such distribution it had only a small amount of cash on hand. It also, pursuant to the plan of reorganization, distributed its remaining cash and turned over to its stockholders all of the shares of stock of the Nevada corporation in exchange for the outstanding shares of its own stock.
The petitioner is a foreign corporation. Under the reorganization provisions of the Revenue Act of 1928, a foreign corporation is not to be treated differently from a domestic corporation. The dividends paid by the Delaware corporation and received by the petitioner in the amounts of $611,825.76 on June 1, and $5,547.50 on June 6, 1928, wore paid out of the accumulated earnings of the Delaware corporation. Such dividends constitute distributions which have the effect of taxable dividends received by it under section 112 (c) (2). Being dividends, they are deductible from the gross income of the petitioner under section 23 (p) of the taxing statute.
The respondent objects to this conclusion, contending that the dividends received by the petitioner from the Delaware corporation are not “taxable dividends” within the meaning of section 112 (c) (2). He takes the position that inasmuch as a corporation is entitled to deduct from gross income dividends received by it from domestic *922 corporations it is not taxable upon them and hence that they do not constitute “taxable” dividends to it.
This argument of the respondent is directly opposed to Commissioner v. Forhan Realty Corporation (C. C. A., 2d Cir.), 75 Fed. (2d) 268; and Rose v. Little Investment Co. (C. C. A., 5th Cir.), 86 Fed. (2d) 50, which we think correctly construe the statute. In the last named case the court stated:
* * * The phrase “a taxable dividend” means only that the distribution is . of profits and not of capital, and of profits accumulated since February 28, 1913. and thus in nature and in history subject to income tax. * * *
To the same effect see Commissioner v. Owens (C. C. A., 5th Cir.), 69 Fed. (2d) 597; and George Woodward, 23 B. T. A. 1259.
The respondent submits that “the two cash distributions made to petitioner by United Filters Corporation [Delaware corporation] were payments in liquidation of its stock and are taxable as liquidating dividends.”
Section 115 (c) of the Revenue Act of 1928 provides:
(c) Distributions in liquidation.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. * * *
It will be noted that the gain or loss to the distributee resulting from distributions in liquidation “shall be recognized only to the extent provided in section 112.” We think it a fair inference from the evidence of record that the cash distributions made by the Delaware corporation were distributions in liquidation of that corporation. At the meeting of the board of directors of that corporation on May 17, 1928, a dividend of $64.96 per share payable to the stockholders of record on June 1, 1928, was declared. Immediately thereafter the board of directors adopted a plan of reorganization which provided for the dissolution of the Delaware corporation. We have found as a fact that there was a reorganization of the Delaware corporation within the purview of section 112 (i) of the taxing statute. The declaration of the dividend on May 17 was incident to such reorganization. It was a part of the plan of reorganization. Likewise, the distribution of the remaining cash voted by the former directors of the Delaware corporation on June 5 and received by the petitioner on June 6 was a part of the plan of reorganization.
We think it is clear that it was the purpose of Congress to treat as taxable dividends to the recipients dividends paid by a liquidating corporation, a party to a reorganization, out of earnings which had been accumulated subsequent to February 28, 1913. Since the two *923 dividends received by the petitioner on June 1 and June 6 in the amounts of $611,825.76 and $5,547.50, respectively, were taxable dividends to it, they constitute legal deductions from the gross income of the petitioner under section 23 (p).
The contentions of the petitioner with respect (1) to the dividends received by it from the Delaware corporation, and (2) to its claim that the gain realized by it from the exchange of shares of stock of the Delaware corporation for shares of stock of the Nevada corporation is not recognized for tax purposes under section 112 (b) (3), are sustained.
The remaining question for consideration is whether the petitioner derived taxable gain from the sale by it on June 27, 1928, of shares of stock of the Nevada corporation. Admittedly the petitioner realized a gain from the sale. The petitioner contends, however, that the sale was made outside the United States and that the gain is not subject to United States income tax.
Upon this point it is to be noted that the petitioner is a foreign corporation. The shares of stock of the Nevada corporation owned by it were personal property. A foreign corporation is liable to income tax upon income derived from sources within the United States. Section 119 of the Revenue Act of 1928 provides in part:
(e) Income from sources partly within and, partly without United States.— * * * Gains, profits and income derived from the purchase of personal property within and its sale without the United States or from the purchase of personal property without and its sale within the United States, shall he treated as derived entirely from sources within the country in which sold, * * *
(f) Definitions.—As used in this section the words “sale” or “sold” include “exchange” or “exchanged”; * * *
The rule is well established that title to property passes at the place of sale where the final act of the seller making effective the sale takes place. Compania General v. Collector, 279 U. S. 306. In East Coast Oil Co., S. A., 31 B. T. A. 558, 561; affd., 85 Fed. (2d) 322, the Board said: “the place of sale is where the final act of the seller, causing title to pass, was done.”
The petitioner contends that it sold 46,858 shares of A stock and 42,058 shares of B stock of the Nevada corporation to the Bank of Montreal, which in turn sold the shares to the bankers in San Francisco. The respondent strenuously contends that this was not a bona fide sale and that the transfer of the shares to the bank of Montreal was for accommodation only. In its brief the petitioner argues that it is immaterial whether the Bank of Montreal be considered as principal or as agent in effecting the sale to the bankers; that in any event the sale to the bankers was made in Canada on June 27. From a consideration of the entire record, we are of the *924 opinion that the Bank of Montreal should be regarded only as agent of the petitioner in effecting the sale to the bankers, although the evidence shows the payment of transfer taxes in Canada upon the transfer of the shares from the petitioner to the Bank of Montreal.
Up to the time of the sale by the petitioner of 46,858 shares of A stock and 42,058 shares of B stock of the Nevada corporation the petitioner was clearly the owner of those shares. Certificates for all of the holdings of the petitioner in the Nevada corporation were on deposit with the Bank of Montreal, Montreal, Canada. The petitioner through R. A. Young, its attorney, negotiated the sale of these shares to bankers in San Francisco. He made it very clear to them, however, that the sale must take place in Canada and not in the United States. The bankers made the Royal Trust Co. of Montreal, Canada, their agent for the purchase of them. They authorized the Royal Trust Co. as their agent to purchase the shares for them. They sent to the Ottawa branch of the Royal Trust Co. funds with which to acquire the shares. The Royal Trust Co. paid the money to the Bank of Montreal at Ottawa for the purchase of the shares and the Bank of Montreal turned over to the Royal Trust Co. at Ottawa certificates for the shares. The Royal Trust Co. had been given authority by the Nevada corporation to write the word “cancelled” across the face of each of the certificates and to advise the proper parties in San Francisco as soon as it had made the purchase. It advised the proper parties in San Francisco of the purchase of the shares and of its action in canceling the certificates and immediately thereafter the Nevada corporation caused new certificates to be issued to take the place of those purchased by the Royal Trust Co. and canceled pursuant to the authority given.
The respondent contends that by reason of the fact that the bankers were to receive the reissued certificates in San Francisco the actual sale was made within the United States.
We think it is clear from the evidence that it was the intention of all parties concerned that the petitioner should part with all of its right, title and interest in and to the shares of the Nevada corporation in question by the delivery of the certificates for the shares to the Royal Trust Co. The rule is well established that in the case of a sale of corporate stock title passes with the delivery of certificates for the shares to the purchaser, where that is the intention of the contracting parties. Johnston v. Laflin, 103 U. S. 800; Early v. Richardson, 280 U. S. 496. In Powers v. Pacific Diesel Engine Co., 206 Cal. 334; 274 Pac. 512, it is stated:
It is common knowledge that, as between the parties to the transaction, the property in shares of stock customarily passes in the ordinary and regular course of trade by delivery of the certificates indorsed in blank by the person to whom the certificate purports on its face to have been issued. * * *
*925 To the same effect is McNeil v. Tenth National Bank, 46 N. Y. 325.
The subsequent reissuance of certificates for the shares by the Nevada corporation in San Francisco was solely for the purpose of enabling the bankers to get immediate possession of certificates for the shares, and had nothing to do with effecting the sale. Neither was it material that the Bank of Montreal made it a condition of its acting as intermediary that the purchase price of the securities should not be released to the petitioner until it had been advised by the bankers that they had received the reissued certificates.
Since the evidence clearly establishes that the petitioner sold its shares of stock in the Nevada corporation in Canada, and not in the United States, the profit realized from the sale is not subject to Federal income tax.
In the drafting of the bill which later became the Revenue Act of 1932, Congress realized that a very “serious loophole for avoidance of taxes” existed under the Revenue Act of 1928. This is clearly apparent from the report of the Ways and Means Committee to the House of Representatives accompanying the bill which later became the Revenue Act of 1932. In this report (Rept. No. 798, 77th Cong., 1st sess., p. 20) it is stated:
Property may be transferred to foreign corporations without recognition of gain under the exchange and reorganization sections of the existing law. This constitutes a serious loophole for avoidance of taxes. Taxpayers having large unrealized profits in securities may transfer such securities to corporations organized in countries imposing no tax upon the sale of capital assets. Then, by subsequent sale of these assets in the foreign country, the entire tax upon the capital gain is avoided. For example, A, an American citizen, owns 100,000 shares of stock in corporation X, a domestic corporation, which originally cost him $1,000,000 but now has a market value of $10,000,000. Instead of selling the stock outright A organizes a corporation under the laws of Canada to which he transfers the 100,000 shares of stock in exchange for the entire capital stock of the Canadian company. This transaction is a nontaxable exchange. The Canadian corporation sells the stock of corporation X for $10,000,000 in cash. The latter transaction is exempt from tax under the Canadian law and is not taxable as United States income under the present law. The Canadian corporation organizes corporation Y under the laws of the United States and transfers the $10,000,000 cash received from the sale of corporation X’s stock in exchange for the entire capital stock of Y. The Canadian corporation then distributes the stock of Y to A in connection with a reorganization. By this series of transactions, A has had the stock of X converted into cash and now has it in complete control. [Italics supplied.]
Subsection (k) of section 112 of the Revenue Act of 1932 was designed to cure the defect in the earlier statute. It reads as follows:
SEC. 112. RECOGNITION OF GAIN OR LOSS.
*******
(k) Foreign Corporations.—In determining the extent to which gain shall lie recognized in the ease of any of the exchanges or distributions (made after the *926 date of the enactment of this Act) described in subsection (b) (3), (4), or (5), or described in so much of subsection (e) as refers to subsection (b) (3) or (5), or described in subsection (d) or (g), a foreign corporation shall not be considered as a corporation unless, prior to such exchange or distribution, it has been established to the satisfaction of the Commissioner that such exchange or distribution is not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income taxes.
It will be noted that the amendment made by the Revenue Act of 1932 was effective from the date of the enactment of that act. It was never designed to be applied retroactively.
A case bearing some resemblance to the proceeding at bar is Kaspare Cohn Co., Ltd., 35 B. T. A. 646. There a Canadian corporation had been formed for the purpose of effecting a sale of securities of domestic corporations. The respondent held both the Canadian corporation and a domestic corporation taxable upon the profit realized upon the sale. Upon the evidence before it the Board held that the Canadian corporation was a mere agency or instrumentality of the real owner of the stock, and that the domestic corporation, and not the Canadian corporation, was taxable upon the profit realized from the sale. The Panama corporation, the petitioner in the proceeding at bar, was not a mere agency of the Delaware corporation and its stockholders.
We do not have before us in this proceeding either the Delaware corporation or its stockholders. Whether or not they might be liable to income tax upon profits realized from the sale by the petitioner to the bankers in San Francisco of the shares of stock of the Nevada corporation is a question likewise not before us. Since the respondent has not determined deficiencies against either the Delaware corporation or its stockholders, who might be considered the parties in interest, the opinion of the Board in Kaspare Cohn Co., Ltd., supra, is not controlling here.
Reviewed by the Board.

Judgment will be entered under Rule 50.

VAN Fossan dissents.

 SEC. 112. RECOGNITION OF GAIN OR LOSS.

****** *

(b) Exchanges solely in kind.—
****** *
(3) Stock for stock on reorganization.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.
* * * * * * *
(c) Gain from exchanges not solely in kind.—
(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.
(2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property.