CAROLINE B. RUSSELL, executrix, *vs.* AMERICAN BELL
TELEPHONE COMPANY & others.

Suffolk.   December 2, 1901. — February 27, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Estoppel.   Bailment.   Corporation,* Transfer of shares.

Where there is a custom among banks and brokers for certificates of stock with
the transfer on the back signed in blank to pass from hand to hand without in-
quiry, one who intrusts to a broker such a certificate thus signed for the pur-
pose of having it exchanged for a new certificate including an additional share
is estopped to assert his title against a *bona fide* pledgee to whom the broker
fraudulently has pledged the certificate to secure his own debt, and whether or
not the broker's act amounted to larceny is immaterial. *Whether* the intrusting
bailor knew of the custom also is immaterial. *Also, semble,* that St. 1884, c. 229,
may dispose of the case.

BILL IN EQUITY against the American Bell Telephone Com-
pany, a Massachusetts corporation, one Charles M. Gleason, a
stockbroker, and the Beacon Trust Company, to enjoin the
transfer of eight shares of stock of the defendant telephone
company and to require the delivery of the certificate represent-
ing those shares to the plaintiff whose testatrix had intrusted
them to the defendant Gleason who fraudulently had pledged
them to the defendant trust company to secure his own note,
filed March 29, 1900.

In the Superior Court, the case was heard by *Mason,* C. J.,
who made a decree for the plaintiff, ordering the defendant trust
company to deliver the certificate to the plaintiff by a proper
transfer and the defendant telephone company upon surrender
of the certificate to issue to the plaintiff a new certificate for the
stock represented by the certificate surrendered. From this
decree the defendant appealed.

The judge found the facts to be as follows:

The plaintiff is the executrix of the will of Caroline M. Rus-
sell, late of Medford, deceased. The plaintiff's testatrix, in
April, 1897, was the owner of eight shares of the capital stock
of the American Bell Telephone Company, which stood in her
name on the books of that company and have not since been

transferred thereon.    The testatrix was then seventy-five years old or more and was in feeble health, but had full mental capacity to transact business.    The defendant Gleason was then a stockbroker doing business in Boston, but living near the testatrix, and had at times advised and assisted her in business transactions and was believed by her to be entirely trustworthy. The defendant telephone company was then about to increase its capital stock, and had issued notice to its stockholders of their right to subscribe for new stock in proportion to their several holdings.    The defendant Gleason knew that the testatrix had the eight shares of stock, and, without being requested to do so, called at her house in the evening, when he had reason to believe she was alone, and when she was alone, and informed her of her right to take new stock, advised her to avail herself of that right, and offered his assistance to enable her to surrender her certificate of eight shares and obtain one for the larger number, which should include the new stock.    Acting upon the advice and under the direction of Gleason, the testatrix signed the transfer upon the back of the certificate for eight shares, in blank, and, for the purpose of surrendering the certificate to the company and obtaining in place a new certificate which should include the new stock to be taken, and for no other purpose, delivered the certificate to Gleason.    Gleason did not seek to obtain a new certificate, but fraudulently pretended to do so, that he might obtain possession of the certificate and use it as security for a loan or loans to himself until he should be able to repay such loan or loans and then deliver the certificate to the company pursuant to the purpose for which it was intrusted to him.    Gleason did not surrender the certificate to the company, but converted it to his own use, and fraudulently represented to the defendant trust company, that he was the owner of the stock represented by the certificate, and delivered the certificate to that company in pledge to secure his own note for $2,500.    The defendant trust company took the pledge for value in good faith without knowledge of the fraud of Gleason.

" There is a custom among banks and brokers for certificates like that in question, with the transfer on the back signed in blank, to pass from hand to hand without inquiry as to the title of the party in possession unless some special cause for suspicion

exists, but said Caroline M. Russell did not have knowledge of this custom."

Gleason still owed the defendant trust company $2,300 on the note, to secure which he fraudulently pledged the certificate, and the trust company still held the certificate.

The plaintiff's testatrix Caroline M. Russell never learned of the fraudulent acts of Gleason, and, a short time after she intrusted the certificate in question to him for surrender to the defendant telephone company, was stricken with paralysis, and until her death, more than two years later, was incapacitated and unable to attend to any business. After her death and the appointment of the plaintiff as executrix under her will, there was no unreasonable delay in ascertaining the facts and taking action to secure the plaintiff's rights.

*B. B. Jones*, (*F. Cabot* with him,) for the Beacon Trust Company.

*I. R. Clark*, (*J. P. Russell* with him,) for the plaintiff.

HOLMES, C. J. The plaintiff's testatrix intrusted a certificate of stock, indorsed in blank, to a fraudulent agent, and he, instead of using it for the purpose for which it was intrusted to him, obtained an advance from the defendant by giving the certificate in pledge. The case, therefore, so far, falls within the general reasoning of *Scollans* v. *Rollins*, 179 Mass. 346, and the usage referred to in that case was found to be proved.

In order to avoid the intimations of *Scollans* v. *Rollins,* the plaintiff sets up that in this case only the possession of the certificate, not the property, passed to the agent and that, as the possession was obtained by fraud, it was obtained by larceny in judgment of law. In *Scollans* v. *Rollins* it is admitted that the general principle there laid down would not apply to an instrument indorsed in blank and stolen before it had been transferred. We shall not examine the premises of this defence because we cannot accept the conclusion. The qualification of the rule, as not applying when the instrument is stolen, is not based upon the name of the agent's crime but upon the fact that in the ordinary and typical case of theft the owner has not intrusted the agent with the document and therefore is not considered to have done enough to be estopped as against a purchaser in good faith. He certainly has not done enough if the·

estoppel is based upon the principle that when one of two innocent persons is to suffer the sufferer should be the one whose confidence put into the hands of the wrongdoer the means of doing the wrong. But in a case like the present the agent has been intrusted with the converted property, and it is totally immaterial whether, by a stretch which extends larceny beyond the true field of trespass, his wrong has been brought within the criminal law or not. The ground of the estoppel is present and the estoppel arises.

The distinction is not new. On the one side are cases like *Knox* v. *Eden Musee Americain Co.* 148 N. Y. 441, where an agent or servant simply had access to a document remaining in the possession of the owner; on the other, cases like *Pennsylvania Railroad's appeal*, 86 Penn. St. 80, where possession is intrusted to the agent for one purpose and he uses it for another. It cannot matter in the latter class that the agent intended the fraud from the outset. See further *Brocklesby* v. *Temperance Permanent Building Society*, [1895] A. C. 173, 181; *Farquharson* v. *King*, [1901] 2 K. B. 697.

It is found by the court that the testatrix did not know of the custom, and if the question before us were the construction of a contract, her knowledge might be important. But she knew that she was putting into her agent's hands an instrument which made actual deceit possible, and it is not argued for the plaintiff that, under such circumstances and considering the nature of the usage which has been adopted as law in many jurisdictions, she did not take the risk of the appearances being interpreted as it is usual for business men to interpret them.

It may be that the case is sufficiently disposed of by St. 1884, c. 229. It certainly is within the words of that act.

*Decree reversed.*