GEORGE B. BAKER & others *vs.* ROBERT E. DAVIE & others.
WILLIAM H. JACKSON *vs.* ROBERT E. DAVIE & others.

Suffolk.    January 12, 15, 1912. — March 11, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, SHELDON, & DeCOURCY, JJ.

*Estoppel. Pledge. Custom. Equity Jurisdiction,* Fraudulent pledge, Marshalling of assets. *Corporation,* Transfer of shares.

Where there is a custom, that a certificate of shares in a corporation accompanied by an instrument of power of transfer signed in blank by the person named in the certificate as owner, in the possession of a person who is known and is of good reputation, "if the signature is guaranteed by a stock exchange house," is treated as "capable of good transfer and delivery by such holder" for sale or pledge, the owner who has entrusted such a certificate and power of transfer to such a holder is estopped to deny the title of a pledgee who took the certificate and power of transfer from the holder under such custom in good faith. In the present case it was held that the operation of the estoppel was not affected by certain representations made by the holder of the certificate as to his right to use the stock, or by the fact that the guaranty of the signature

of the owner of the certificate by the stock exchange house on the power of transfer was procured without the knowledge of the owner after its delivery to the holder.

In a suit in equity to enforce an alleged equitable pledge of certain shares of a corporation in the possession of a trust company subject to a prior pledge to the trust company, it appeared that the shares were transferable only on the books of the corporation on surrender of the certificate, that the owner of the shares, in whose name they stood, entrusted the certificate together with an instrument of transfer and power of attorney signed by him in blank to a stockbroker, then known as of good reputation, that the stockbroker dishonestly pledged the shares for his own benefit to the trust company, which took them in good faith under a custom by which such a certificate with an instrument of transfer executed and witnessed as this one was "when in the possession of a person who is known and is of good reputation," is treated "when offered for sale, pledge or transfer . . . as capable of good transfer and delivery by such holder for such sale or pledge," and that thereby the owner of the shares was estopped to deny the validity of the pledge to the trust company. Later the stockbroker, in consideration of the promise of the plaintiff not to sue him at that time for money which he owed the plaintiff, executed an assignment in writing to the plaintiff of all his "right, title and interest" in the shares of stock pledged by him to the trust company, subject to the rights of that company as pledgee. Before accepting this assignment, the plaintiff went to the trust company and inspected the certificate of stock and the instrument of transfer and gave notice to the trust company of the assignment. *Held,* that there was no pledge to the plaintiff because there was no delivery, and that the owner of the shares was not estopped to assert his title as against the plaintiff, because the custom had no application when the person to whom the owner had delivered the certificate and the instrument of transfer no longer was in possession of them, and because the instrument of transfer from the owner to the stockbroker did not transfer the title to the shares but only a right to acquire such title by surrendering the old certificate to the corporation and obtaining a new one.

In a suit in equity by the owner of certain shares of stock held by the defendant under a pledge from a dishonest stockbroker which the plaintiff under a custom is estopped to deny, if it appears that the broker who pledged the plaintiff's shares to the defendant also pledged to the defendant to secure the same indebtedness other shares of stock to which the broker had the title, the shares to which the broker had title first should be resorted to in satisfying the defendant's claim before applying the shares to which the plaintiff has the title subject to the pledge.

Two BILLS IN EQUITY, filed in the Superior Court on November 18 and 21, 1910, the first by the members of the firm of Baker, Ayling and Company against Robert E. Davie, William H. Jackson, Henry I. Harriman, the Federal Trust Company, a corporation, and William Wheeler, intervening by petition, and the second by William H. Jackson against Robert E. Davie, the plaintiffs in the first case, the Federal Trust Company and other defendants.

The cases were referred to George W. Estabrook, Esquire, as master to be heard together, the master to report his findings with such facts and questions of law as either party might request. Exceptions to the master's report were overruled by *Hitchcock,* J. The questions in both suits arose from the frauds and dishonesty of the first named defendant, who at the time of the transactions involved in the suits was about twenty-four or twenty-five years of age and was doing business as a stockbroker in Boston, and who after these transactions absconded. The facts relating to the respective claims of the Federal Trust Company, Baker, Ayling and Company and William H. Jackson are stated in the opinion.

In regard to the transaction between Davie and the defendant Harriman the master found the following facts:

"At the time of making some one of the loans by the Federal Trust Company to Davie, Davie added to the collateral pledged to the Trust Company two hundred shares of the Connecticut River Power Company, a certificate for which was in his possession indorsed in blank by the person named in it as owner, which he had obtained from the defendant Harriman, its holder and actual owner, Harriman having authorized him to pledge it to the Federal Trust Company to secure a loan of $3,000 upon a representation that such use would assist him, Davie, in obtaining membership of the stock exchange. Instead of so doing he pledged it to the Federal Trust Company as collateral to secure $10,000, and also as collateral for all his indebtedness to that company, then amounting to about $41,330, in addition to this new loan of $10,000.

"Harriman learned of the fact of the misuse of the stock soon after such misuse and learned it from Davie, and when so informed, though protesting against such use of the stock, so far acquiesced in the transaction that he did not give any notice of it to the Federal Trust Company but permitted the state of facts to continue, seeking in other ways than by reclaiming the stock to indemnify himself. It is still in the possession of the Federal Trust Company held to secure the same obligations for which it holds the American News Company stock as collateral."

On May 3, 1910, Davie made to Baker, Ayling and Company the assignment which is described in the opinion.

On June 11, 1910, Davie gave an assignment to the defendants Harriman and Chace of his right, title and interest in the stocks held as collateral by the Federal Trust Company. In regard to this the master found as follows: "I find that neither Harriman nor Chace made any inquiry of the Federal Trust Company, or of Jackson, or any one, as to the stock of the American News Company — or made any examination of the stock or powers — or ever saw them — or knew the name of the certificate's owner — or inquired as to it — or changed position in any way by reason of anything done or omitted by Jackson."

In regard to the assignment held by the defendant Wheeler, the master found the following facts: "The assignment itself was absolute in form and under seal. It was dated the twenty-ninth day of June, 1910, and set over to William Wheeler 'all equity in certain collateral which is held by the Federal Trust Company of Boston, Mass., against a loan amounting to $79,379.20, comprising ten hundred and seventy shares of stock of the American News Company of New York and two hundred shares preferred stock of the Connecticut River Power Company of Maine. Also subject to a lien of Baker, Ayling & Co. . . . amounting to $12,500 now on file with the Federal Trust Company.' Mr. Wheeler made no inquiries of the Federal Trust Company or of Baker, Ayling & Company, and no examination of the certificate and powers of attorney in question, never having seen them until August 20, 1910, subsequently to all his dealings with Davie except one — when he advanced for him at his request one hundred shares of La Salle stock worth $1,000. He made no inquiry as to the ownership of Jackson, the rights of Davie or the restrictions upon the transfers of stock. He knew nothing of Jackson in the matter."

Jackson's seventh and eighth exceptions to the master's report, referred to in the opinion and sustained by this court, were as follows:

"7. For that the master has found that Jackson is estopped against Baker, Ayling and Company from asserting his right to the certificate of American News Company stock until their claim is paid; whereas it appears from the facts found by the master that Jackson was not so estopped, and that Baker, Ayling and Company were not purchasers for value, and that they were

merely assignees of Davie's right, title and interest in and to said certificate and the proceeds thereof, after payment of the loan to the Federal Trust Company.

"8. For that the master has found that Jackson is estopped from asserting his claim to the American News Company stock pledged to the Federal Trust Company until the value of the La Salle stock, viz: one thousand dollars is paid to William Wheeler; whereas, it appears from the facts found by the master that Jackson was not so estopped, and that William Wheeler was merely assignee of Davie's equity in said stock."

The cases were heard by *Hardy*, J., upon a motion of the Federal Trust Company for confirmation of the master's report and for a decree in accordance therewith. The judge made a final decree. The portions of the decree which were held by this court to be correct were as follows:

"2. That the Federal Trust Company is entitled to hold ten hundred seventy shares of the eleven hundred seventy shares of the American News Company represented by certificate No. 150, and two hundred shares of Connecticut River Power Company preferred stock, now in its possession as security for its loans to said defendant Davie amounting to $79,379.20, with interest thereon at six per cent per annum from August 1, 1910, to the date when said stock shall be redeemed as hereinafter provided, or said stock sold and the proceeds thereof applied to the payment of said loans and interest. . . .

"3. That subject to the rights of redemption hereinafter set forth, said Federal Trust Company may sell, assign and deliver said shares of stock at any brokers board at public auction or private sale at the option of said trust company or its assigns, with the right in said trust company or its assigns to be purchasers at such sale. The Federal Trust Company shall first sell the said two hundred shares of stock of the Connecticut River Power Company, and apply the proceeds thereof, after deducting the costs and expenses thereof, as hereinbefore set forth, to the payment of the amount due it as aforesaid, before selling the one thousand and seventy shares of American News Company stock; and if the proceeds thereof prove to be inadequate for full satisfaction of its claim as aforesaid, it shall then sell the said one thousand and seventy shares of American News Company stock."

[The remainder of this paragraph, held to be incorrect, related to the payment out of the proceeds of such sale of the claim of Baker, Ayling and Company as provided for in other paragraphs of the decree, also held to be wrong.]

"7. That the defendants Harriman and Chace have no right, title or interest in or to any part of said shares of stock of the American News Company."

"10. That said Federal Trust Company shall hold one hundred shares out of eleven hundred seventy shares of American News Company stock represented by certificate No. 150, now held by it, in trust to turn over the same or an equal number of shares to said Jackson upon any sale, transfer or division of said shares represented by said certificate No. 150, or upon any redemption hereunder by said Jackson.

"11. That said Robert E. Davie owes to William H. Jackson the sum of $107,000, with interest from November 30, 1909, except that if said Jackson shall receive any balance of the proceeds of the sale of the said one thousand and seventy shares of American News Company stock paid to him . . . said balance shall be applied in reduction of the sum hereby adjudged to be due from said Davie; and provided further that in case said Jackson shall redeem said stock hereunder by the payment of any sum less than the amount hereby adjudged to be due from said Davie and that thereupon said stock shall be delivered to him, the difference between the amount so paid by him in redemption and the amount hereby adjudged due from said Davie shall be applied by Jackson in reduction of the sum so adjudged to be due from said Davie."

The defendant Jackson appealed from the decree, particularly to the portions of it omitted above relating to the payment of the claim of Baker, Ayling and Company. The intervening defendant Wheeler and the defendants Harriman and Chace also appealed.

*C. Warren*, (*G. Perry* with him,) for Jackson.

*W. M. Noble*, (*A. S. Davis* with him,) for Wheeler.

*S. H. Pillsbury*, for Harriman and Chace.

*E. R. Anderson*, for Baker.

*J. P. Fagan*, (*J. E. Cotter* with him,) for the Federal Trust Company.

RUGG, C. J.   These suits involve the rights of various persons in certain shares of stock.   The occasion for litigation arises from the perfidy of Robert E. Davie.   William H. Jackson was the owner of eleven hundred and seventy shares of the American News Company, for which he held a single certificate in ordinary form, stating among other things that it was "transferable only on the books of the company, by him or his attorney, on surrender of this certificate."   He was induced by fraudulent representations of Davie, of such nature that as between the two no title or right to use for his own benefit passed to Davie, to hand to the latter this certificate, together with two instruments, each signed in blank by himself.   These are called "powers of attorney and transfer" and although printed as a single document, they consist of two parts, the first being a bargain, sale and transfer of the stock and the second being an irrevocable power of attorney to sell and make over all or any part of the stock and to do all things necessary to accomplish that purpose.   The one of these now material was a transfer of ten hundred and seventy of the eleven hundred and seventy shares of stock represented by the certificate.   The name of the transferee and attorney was left blank.

Davie signed as witness to Jackson's signature and, after having the signature guaranteed by a firm of stockbrokers, used the certificate and instrument of transfer as collateral, on which he borrowed large sums of money from the Federal Trust Company. The physical possession of the certificate and instrument has continued in the trust company at all times.   Davie, during these transactions, was a stockbroker of good reputation in Boston and well known to all the parties to these suits.

The master found that "where a certificate of stock is in the possession of a person who is known and is of good reputation . . . and . . . where the one holding such certificate is in possession of a separate instrument of power and transfer signed by the person named in the certificate as owner, applicable to such stock with blank spaces left for the apparent purpose of adapting the paper to the transfer of stock when filled appropriately — it is the custom in Massachusetts — at least if the signature is guaranteed by a stock exchange house and is witnessed, when offered for pledge, sale or transfer, to treat them as capable

of good transfer and delivery by such holder for such sale or pledge."

1. It is plain that upon these findings the Federal Trust Company became entitled to all the rights of a pledgee of the ten hundred and seventy shares of stock, no matter how faithless Davie had been to his agreement with the owner, by which he secured possession of the stock and the instrument.

The case falls within *Scollans* v. *Rollins*, 179 Mass. 346, and *Russell* v. *American Bell Telephone Co.* 180 Mass. 467. The principle of law established by these cases is that if the owner of stock knowingly places in the hand of another the certificate therefor, either indorsed in blank or by a separate instrument of transfer and power of attorney, the person to whom the certificate and instrument are delivered can pass a good title by delivery or pledge regardless of the relations between him and the owner. This is not on the ground that the certificate becomes a negotiable instrument, but on the ground of estoppel, because the owner, having given another such indicia of title as clothes him with the appearance of ownership, is precluded from setting up title in himself as against a holder in good faith.

Jackson seeks to distinguish the present case in that the language used by Davie at the time of procuring the loan from the Federal Trust Company was sufficient to put the latter on inquiry and to indicate that his title was less than might have been assumed if nothing had been said. The circumstance on which he relies is that Davie stated to the Federal Trust Company at the time of obtaining from it the first and subsequent loans "that stock was practically his." "This stock is all right." "This was given to him all right, given to him to use in the market." "It was given to him to use." "He had the right to use that stock." The master specifically finds that the trust company acted in good faith. This language does not show any limitation upon what appeared to be the rights of Davie under the instrument signed by Jackson in the light of the custom proved. There is nothing in it to suggest that he did not actually possess, with reference to the certificate, the rights which he undertook to exercise. It cannot be said fairly to derogate from the power to transfer the absolute title which, by the words of the instrument in connection with the custom, he appeared to have.

It is further argued in behalf of Jackson that the custom proved in the case at bar is essentially different from that found in *Scollans* v. *Rollins* and *Russell* v. *American Bell Telephone Co.*, in that it prevails with certainty only "if the signature is guaranteed by a stock exchange house" and that as the guaranty of his signature by the stock exchange house was procured by Davie without the knowledge of Jackson and after the delivery of the instrument to him, Jackson is not prevented, under the somewhat strict rules of estoppel, from setting up title in himself. Entrusting the certificate to Davie in blank was, so far as innocent third persons are concerned, an authorization so to fill the instrument as to make it effective to accomplish its apparent purpose. The guaranty of signature must necessarily be made after the signing and is something with which the owner has no apparent connection. It appears to be chiefly a safeguard against forgery.

2. After the certificate had been in the possession of the Federal Trust Company for about four months, Davie became indebted to the firm of Baker, Ayling and Company in large sums, on account of which they threatened action against him. In return for their promise not to bring action at the time, he executed an assignment to Baker, Ayling and Company of "All my right, title and interest in and to all securities now or hereafter pledged by me with the Federal Trust Company . . . and now consisting of ten hundred seventy (1070) shares of the capital stock of the American News Company and two hundred (200) shares of the preferred stock of the Connecticut River Power Company of Maine, subject, however, to all the rights of the Federal Trust Company to hold the same as collateral." Before accepting this assignment, Baker, Ayling and Company went to the Federal Trust Company and inspected this certificate of stock and instrument signed by Jackson. They thereupon gave notice to the Federal Trust Company of the assignment to them by Davie.

A certificate of stock indorsed in blank is not negotiable. It is not governed by the law as to negotiable instruments. It is the evidence of ownership of personal property. Title to the shares of the American News Company, under the form of certificate here disclosed, could be actually transferred only upon the books of the company upon surrender of the certificate. There was, therefore, at common law no completed transfer of title by Jack-

son, even though he signed the instrument. Apart from controlling custom, this is the common law of this Commonwealth and of England. *Scollans* v. *Rollins*, 173 Mass. 275, 278, 279. *France* v. *Clark*, 26 Ch. D. 257. *Société Générale de Paris* v. *Walker*, 11 App. Cas. 20. *Earl of Sheffield* v. *London Joint Stock Bank*, 13 App. Cas. 333, 343. *Colonial Bank* v. *Cady*, 15 App. Cas. 267, 273, 277, 278, 285. See *Fox* v. *Martin*, 64 L. J. (N. S.) Ch. 473.

That position is the starting point. Baker, Ayling and Company show no right to the shares unless they get beyond this point. But there is a controlling custom found to exist in the case at bar. They rely upon that as giving them rights. That custom is that a certificate in the condition in which this one was "when in the possession of a person who is known and is of good reputation," is treated "when offered for sale, pledge or transfer . . . as capable of good transfer and delivery by such holder for such sale or pledge." The arrangement between Davie and Baker, Ayling and Company was not a pledge. It is elementary that physical possession is essential to the existence of a pledge. The physical possession of this certificate has remained at all times in the Federal Trust Company. The transaction between Davie and Baker, Ayling and Company was in writing. It purported to be a transfer directly from him to them, subject to the rights of the trust company, of his rights in the stock. It was not at this time in the "possession" of Davie, but of the trust company. The custom governs, however, only when the certificate is in the "possession" of the person undertaking to pass title. Moreover, the further terms of the custom are that when offered for sale or transfer it is "capable of good transfer and delivery." While transfer may be in some connections a word of broad significance, it means accurately a passing over of a thing, which implies something more than a constructive act. Delivery also means commonly an actual change of physical custody. That "transfer and delivery" as used in the phrase expressing the custom are to be construed as referring to manual change in the holding of the certificate is confirmed by the words immediately following, namely, "by such holder." The only "holder" before mentioned is the person in "possession" of the certificate. The custom establishes the law on a basis somewhat different from that, which would otherwise govern the rights of the parties. Hence, it is to

be interpreted and applied, not as a loose rhetorical expression, but as a rule of law. So interpreted, it means that title to the stock passes when the certificate and instrument of transfer actually pass from one hand to another. It does not cover the case where the one to whom it was originally delivered by the owner, no longer in possession of it by reason of having parted with it in pledge to a third person for less than its full value, undertakes to deal with the value in excess of the pledge by a symbolical transfer to still another person. This is the reasonable interpretation of the custom as applied to the circumstances here disclosed. It appears to be in harmony with the policy of the Commonwealth as now established by the Uniform Stock Transfer Act, St. 1910, c. 171, §§ 1, 5, 18, 22, which, however, is not applicable to this transaction. This conclusion is fortified slightly by the form of the instrument given by Davie to Baker, Ayling and Company, which was not in terms a transfer of the entire value of the stock above the pledge to the trust company, but was only of his "right, title and interest." These words have acquired in deeds a certain and definite meaning. They convey whatever title the grantor has, be it much or little, and that alone. As words of grant they are limited to the estate and interest of the grantor. They do not impart ownership in fee or any other particular extent of proprietorship. *Allen* v. *Holton,* 20 Pick. 458, 464. *Sweet* v. *Brown,* 12 Met. 175. *Hubbard* v. *Apthorp,* 3 Cush. 419. *Commonwealth* v. *Brown,* 15 Gray, 189. *Hoxie* v. *Finney,* 16 Gray, 332. *Barnstable Savings Bank* v. *Barrett,* 122 Mass. 172. *Spreckels* v. *Brown,* 212 U. S. 208, 211. The same rule has been held to apply to sales of personal property. *First National Bank* v. *Massachusetts Loan & Trust Co.* 123 Mass. 330.

It is urged, in behalf of Baker, Ayling and Company, that Jackson ought to be as much estopped to assert his title against them as against the trust company. There are two difficulties with this contention. The first is that they rely and must rely upon the custom, and not upon the terms of the instrument of transfer. That appears plainly from the two reports of *Scollans* v. *Rollins,* 173 Mass. 275, and 179 Mass. 346. If they do not come within the terms of the custom, they must fail. The second is that the transfer signed by Jackson, which they examined in the hands of the Federal Trust Company before agreeing to suspend their ac-

tion at law and to take this assignment from Davie, was not in truth a transfer of title from Jackson. It merely transferred a right which enabled Davie to acquire a legal title by surrendering the old certificate to the company and getting a new one. Jackson still continued to be the only shareholder recognized by the company. This was pointed out clearly by Lord Watson, in *Colonial Bank* v. *Cady*, 15 App. Cas. 267, at 277, 278. The indorsement of a certificate of stock or an instrument of transfer, where title to the stock is transferable only on the books of the company, of itself is an equivocal act. It may mean, apart from custom, something less than or quite different from a transfer of title. 173 Mass. 279. For this reason *Stiff* v. *Ashton*, 155 Mass. 130, has no application. Unless there is a delivery of possession of the certificate, the usual rule applies, that possession of personal property by a third person is not evidence of title, and the owner is not estopped from asserting his rights. This does not impinge upon the rule that when an owner has so acted as to mislead a third person into the honest belief that the one dealing with the property had a right to do so, he is estopped from showing the truth, because here the extent to which the innocent third person could have been misled depends wholly upon the custom. *Jarvis* v. *Rogers*, 13 Mass. 105; *S. C.* 15 Mass. 389, is distinguishable from the case at bar, for there the certificates were transferable merely by indorsement under a rule of the company. *Gardner* v. *Beacon Trust Co.* 190 Mass. 27, is distinguishable on the ground that a negotiable security was there in litigation. The rule established by custom as to certificates of stock is an exception to the general rule. It does not apply to other brokers or persons invested with possession. *Rogers* v. *Dutton*, 182 Mass. 187, 189. *Cooke & Sons* v. *Eshelby*, 12 App. Cas. 271, 277. *Foley* v. *Smith*, 6 Wall. 492.

The argument does not seem to be sound, that it must follow from this position that stock pledged as security in a collateral trust mortgage cannot be held on request of a bondholder. The trustee or mortgagee who holds the stock under such circumstances would stand as the Federal Trust Company does here, and would be responsible to all beneficiaries.

The suggestion that the Federal Trust Company may be treated as the agent of Baker, Ayling and Company does not appear tenable upon the facts of these cases.

3. The grounds upon which this judgment rests as to Baker, Ayling and Company dispose adversely of the claims of the other defendants without adverting to distinctions between them.

4. The marshalling of assets provided for in the decree was correct in principle. Davie wrongfully used two hundred shares of Connecticut River Power Company stock procured by him from Harriman as security for his loans from the Federal Trust Company, but Harriman assented to this use after knowledge, and does not now claim any priority to this stock on that account. The stock of the American News Company is more than sufficient to satisfy the claims of the trust company. In behalf of Baker, Ayling and Company, who hold the first assignment from Davie, it may be urged that this stock should first be resorted to by the trust company on the "equitable rule . . . that a person having a right to satisfy his debt or claim out of two funds, to but one of which another person can resort, shall be compelled first to exhaust the fund to which the other cannot resort before coming upon the one available to both." *Carter* v. *Tanners Leather Co.* 196 Mass. 163, 166. This rule, however, does not apply where the two funds are not derived from a common source or do not belong to a common debtor. The American News Company stock and the Connecticut River Power Company stock do not belong to a common debtor, for the former is the property of Jackson, the right of the trust company to resort to it arising only by estoppel under the custom, while the latter belonged to Davie. Davie being primarily liable, stock to which he had title should first be resorted to. *Smith* v. *Savin*, 141 N. Y. 315.

The result is that exceptions seventh and eighth of Jackson to the master's report should be sustained, and otherwise the master's report should be confirmed, and all other exceptions to it be overruled, and that paragraphs 2, 6, 7, 10 and 11 of the decree of the Superior Court are correct; paragraph 3 is correct, except the concluding portion which orders payment to Baker, Ayling and Company; and the remaining paragraphs are wrong.

Decree reversed and details of new decree in accordance with this opinion to be fixed in the Superior Court.

*So ordered.*