152

E. I. DUPONT DE NEMOURS & COMPANY, a corporation created by and existing under the laws of the State of Delaware,

*vs.*

PHILIP D. LAIRD, GEORGE T. WEYMOUTH, WALTER G. GUY, PHILIP G. RUST and ARCHIBALD DOUGLAS, JR., members of a co-partnership trading under the firm name of LAIRD & COMPANY, and FRANCIS I. DUPONT, EDMUND DUPONT, E. PAUL DUPONT, A. RHETT DUPONT, ARTHUR S. SHETTLE, WILLIAM A. FIND, JR., and WILLIAM A. WHITTAKER, members of a co-partnership trading under the firm name of FRANCIS I. DUPONT & CO.

*New Castle, July 29, 1939.*

*Hugh M. Morris,* for complainant.

*Percy Warren Green,* for Francis I. duPont & Co.

*William S. Potter,* of the firm of Ward & Gray, for Laird & Company.

THE CHANCELLOR: This case is before the court on a bill of interpleader filed by E. I. duPont de Nemours & Company, the complainant. The question to be determined is whether, under the undisputed facts hereinafter stated, the 200 shares of the common stock issued by that

company belongs to Francis I. duPont & Co., or to Laird & Company, and to which of those companies stock certificates should, therefore, be issued.

On the afternoon of September 26th, 1935, F. Irving Walls, the managing head of F. Irving Walls & Co., engaged in the brokerage business in the City of Wilmington, but not a member of the New York Stock Exchange, inquired of the Wilmington office of Francis I. duPont & Co., whether, if an order were placed with that company before three o'clock that day for the purchase of 200 shares of the common stock of E. I. duPont de Nemours & Company, the certificates could be delivered on the following morning. He stated that it would have "the features of a cash transaction." Francis I. duPont & Co. was a member of the New York Stock Exchange, and, also, maintained an office in that city. The customary delivery period of stock, purchased through a brokerage house, is two days after the receipt of the order, and, on this inquiry being made, that company communicated with its New York office and inquired whether the delivery of the stock in question on the following day would violate the rules of the Stock Exchange. Being informed that the said stock could be delivered on the day and time in question Francis I. duPont & Co. communicated this information to Walls & Co., and the order for the purchase of the stock was thereupon given and executed. The stock certificates in question were duly received by Francis I. duPont & Co., at its Wilmington office, on the morning of September 27th, 1935, and were promptly delivered by that company to the Walls Company. At the same time a check for $25,650.00, payable to the order of Francis I. duPont & Company, drawn by the Walls Company on the Central National Bank, of Wilmington, and which represented the purchase price of the stock so sold, was delivered to Francis I. duPont & Co. A receipt for these certificates, made out in the usual form, was, also, given at that time by the Walls Company to the Francis I. duPont Company. The usual confirmatory notice of the sale of that

stock to the Walls Company was, also, delivered by the Francis I. duPont Company. The common stock of the E. I. duPont de Nemours & Company, so delivered, was represented by two certificates, each for 100 shares. Both of these certificates were in street form, being made out in the name of Francis I. duPont & Co., and endorsed in blank by that company, with a power of attorney to transfer the same on the books of E. I. duPont de Nemours & Company. As the Francis I. duPont brokerage concern was a member of the New York Stock Exchange, under the rules of that organization no guarantee of signature was required, and the certificates delivered to Walls & Co., were, therefore, in such form that on delivery to the E. I. duPont Company they could be immediately transferred to the bearer or holder thereof on the books of that company. Some time between 8:15 and 9 o'clock on the morning of September 27th, 1935, and before the New York Stock Exchange had opened, Mr. Walls instructed Laird & Company, by telephone, to sell 200 shares of the common stock of E. I. duPont de Nemours & Company for the account of his company, and stated that the certificates for that stock would be delivered to the Laird office. Shortly after placing the order to sell that stock, an agent of the Walls Company, at the direction of Walls, requested Laird & Company to advance to his company, $24,000 on account of the directed sale of that stock. This practice was not unusual between brokers. The market on the stock in question had closed the afternoon before at approximately 127½, so Laird & Company stated that it would make the requested advance upon the receipt of the certificates for the 200 shares of stock, in street form. The market on duPont common stock opened at about 127¼, and before the receipt of the stock certificates the Walls Company was notified to that effect, but ordered the sale at the market price. Soon after the receipt of the street certificates from Francis I. duPont & Co., Walls caused them to be delivered to Laird & Company for sale, and received the latter's check for $24,000, drawn on the Wilmington Trust

Company, and payable to the order of F. I. Walls & Co. As already indicated, that check represented an advance on the sale price of that stock, and in fact before it had been delivered to Walls & Co., 100 shares of that stock had already been sold on the New York Stock Exchange, and Laird & Company had had notice of that sale; an order to sell the remaining 100 shares on the floor of the Stock Exchange had, also, been entered. At the time this advance was made Laird & Company had no notice, whatever, of any irregularities or fraud, with respect to the sale of these certificates, and there was nothing appearing on them which would give them any such notice. Sometime before 12 o'clock noon, on September 27th, 1935, the check for $24,-000.00, advanced by Laird & Company to Walls & Co., was deposited to the account of the latter company in the Central National Bank, of Wilmington, and, upon the strength of that deposit, checks previously drawn by Walls & Company, and duly presented for payment, were honored by that bank in the usual course of business. These checks drawn by the Walls Company were presented to the Central National Bank through the clearing house some time between 10:30 and 11 o'clock on that morning. Shortly after one o'clock in the afternoon of September 27th, both the Francis I. duPont Company and Laird & Company heard rumors of the sudden death of F. Irving Walls, which were soon verified. On finding that report to be correct, an employee of Francis I. duPont Company communicated, by telephone, with the Central National Bank and was told that the Walls Company check for $25,650 would not be honored because of insufficient funds standing to the credit of that company. The Francis I. duPont Company then notified the transfer department of the E. I. duPont Company, both by telephone and by letter, not to transfer on its books the certificates of stock which the Francis I. duPont Company had delivered that morning to the Walls Company, and not to issue new certificates therefor. Laird & Company, having previously sold the 200 shares of common stock in question, upon learn-

ing of the death of Mr. Walls, immediately tendered the certificates to the E. I. duPont Company for transfer to the purchaser thereof on the New York Stock Exchange. Having notice of the conflicting claims to that stock, the E. I. duPont Company refused to issue new certificates therefor. Thereupon Laird & Company, in an attempt to protect itself against loss, stopped payment on the check for $24,000 drawn on the Wilmington Trust Company, which it had given to Walls & Co., as an advance payment on the sale of the common stock of the complainant company, delivered to it that morning; and so notified the Central National Bank, in which bank that check had been deposited by Walls & Company earlier in the day. As previously stated, however, this notice was not received by the Central National Bank until after checks, drawn by the Walls Company and presented for payment, had been honored on the strength of that deposit.

On September 28th, in the usual course of business, that check was forwarded to the Wilmington Trust Company for payment, but was subsequently returned unpaid, with the notation "payment stopped." Because of its inability to deliver new certificates to the purchaser of the 200 shares of duPont common, sold on the New York Stock Exchange pursuant to the order of Walls & Co., on September 27th, 1935, Laird & Company delivered to Belden & Company, the purchaser of that stock, 200 shares of the same stock owned by it in its individual capacity, and in which Walls & Co., had no interest, whatever.

The proceeds arising from the sale of the stock so sold by Laird & Company for the Walls Company was $25,214.23, and on October 1st, 1935, the customary delivery date of stock sold on the exchange, and in the due course of business that amount was credited to the accounts of Walls & Co., on the books of Laird & Company. The $24,000 check, on account, had been previously charged to that account on September 27th, but on the same date, when payment of

that check was stopped, the Walls Company was, also, credited with that amount. For some months after September 27th, 1935, Laird & Company persisted in its refusal to pay the Central National Bank the $24,000 represented by the check given by it to Walls & Co., and deposited by the latter company to its credit in that bank, but on March 20th, 1936, it finally paid to that bank $24,464.00, which represented the original amount of the check, with interest at four per cent. The check given by Walls & Co., to Francis I. duPont & Co., in payment of the stock so purchased, was returned by the bank, on which it was drawn, to the Francis I. duPont & Company marked "insufficient funds." In fact, when it was drawn and delivered to Francis I. duPont & Co., both Walls and the employee who drew and signed the check knew that that company did not have sufficient funds in the bank to honor it when it should be presented for payment. Walls had told his employee, whom he had directed to draw it, that he expected to procure a loan from his father that day to make it good. There is nothing in the record to indicate that Laird & Company knew any of the facts relating to this check when it made the $24,000 advance to the Walls Company. Nor is there anything in the record to indicate that the Francis I. duPont brokerage company knew that the check of Walls & Co., for $25,650, so delivered to it, was not good. Laird & Company had had numerous previous transactions with Walls & Co., in both buying and selling stocks and other securities; some of which had not been entirely completed on September 27th, 1935. On that date, Laird & Company's books showed a balance in favor of the Walls Company of $5,727.35; but on September 30th that account was charged, in the usual course of business, with $5,005.81, leaving a balance to the credit of Walls & Co., of $654.40, but, by reason of the completion of prior transactions, on October 1st, 1935, the account finally showed a balance due Laird & Company of $1,444.83. These figures do not take into account the 200 shares of the E. I. duPont

common stock, belonging to Laird & Company individually, and delivered by it to Belden & Company, or to the dividends on that stock.

From the undisputed facts, it must, therefore, be conceded that the delivery of the common stock certificates of the complainant company by Francis I. duPont & Co., to Walls & Co., was procured by fraud, in that the check for $25,650.00, which represented the purchase price of that stock, was not only never paid, but, when it was drawn and delivered, Walls & Co. knew that it did not have sufficient funds in bank to meet it when it should be presented for payment. But it must, also, be conceded:

(1) That, prior to the delivery of such stock certificates by Francis I. duPont & Co., to Walls & Co., they had been endorsed in street form, and in that form were subsequently delivered by the Walls Company to Laird & Company for sale; and pursuant to that direction the stock represented thereby was, in fact, sold in two lots by the latter company on the New York Stock Exchange on September 27th, 1935.

(2) That Laird & Company had no notice, whatever, of the fraud previously practiced by Walls & Co., in procuring the stock certificates in question and, relying on the apparent ownership by that company indicated by the possession and form of the certificates, not only made substantial monetary advances thereon, but was, also, forced to deliver other like certificates of the complainant company, owned by it individually, to the purchaser on the Stock Exchange, in order to carry out its contracts of sale.

(3) The only fair inference that can be drawn from the evidence is that both of the sales of the stock of the complainant company in question were made on the morning of September 27th, 1935, before the death of Walls, and before any question, with respect to the real ownership of

that stock, had been raised. In fact, 100 shares thereof had been sold before the $24,000 advance was made by Laird & Company.

Under the pleadings and the admitted facts, the controversy is, therefore, between Francis I. duPont & Co., and Laird & Company, and not between Francis I. duPont & Co., and Walls & Co.

The Uniform Stock Transfer Act has never been adopted in this State, so the determination of this case is necessarily governed by equitable principles, and not by the provisions of that act.

It must be conceded that one having no title to goods, chattels, or other personal property can ordinarily pass none, by an alleged sale to another person. *Mears v. Waples,* 4 *Houst.* 62; *McNeil v. Tenth National Bank,* 46 *N. Y.* 325, 7 *Am. Rep.* 341.

At common law, a sale in a market overt was ordinarily an exception to that general rule (*Mears v. Waples,* 4 *Houst.* 62), but sale of that nature, and the rights incident thereto, were never recognized in this country. *Bouv. Law Dict.,* (*Rawles 3rd Rev.*) 2095.

But another well established and still recognized exception to the general rule above stated is that where the real owner of goods, chattels, or other personal property, by some act on his part, has given to another person the apparent indicia of title thereto, and, therefore, the apparent right to dispose of such property, a bona fide purchaser, or pledgee, for value from the person holding such evidence of title will be protected against the claim of the real owner. *Mears v. Waples,* 4 *Houst,* 62; *McNeil v. Tenth Nat. Bank,* 46 *N. Y.* 325, 7 *Am. Rep.* 341; *Russell v. Amer. Bell Tel. Co.,* 180 *Mass.* 467, 62 *N. E.* 751; *Baker v. Davie,* 211 *Mass.* 429, 97 *N. E.* 1094; *National Safe Dep. Co. v. Hibbs,* 229 *U. S.* 391, 33 *S. Ct.* 818, 57 *L. Ed.* 1241; 12 *Fletch. on Corp.,* § 5565; see, also, 52 *Harvard Law Rev.,* 555.

The rule is aptly stated in *McNeil v. Tenth National Bank*, 46 *N. Y.* 325, 7 *Am. Rep.* 341, where the court said:

"It must be conceded that as a general rule, applicable to property other than negotiable securities, the vendor or pledgor can convey no greater right or title than he has. But this is a truism, predicable of a simple transfer from one party to another where no other element intervenes. It does not interfere with the well-established principle, that where the true owner holds out another, or allows him to appear, as the owner of, or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected."

The mere possession of chattels or other personal property, whether as a mere depository, pledgee or other bailee, without any other evidence of title, or authority to sell, does not come within this rule, and will not enable the possessor, by a sale of it, to give a good title to such property. *McNeil v. Tenth Nat. Bank*, 46 *N. Y.* 325, 7 *Am. Rep.* 341. But, as already indicated, a very different rule ordinarily applies when the owner of such property, not only gives another person possession of it, but, also, gives him written evidence of title, and the apparent power to dispose of it. *McNeil v. Tenth Nat. Bank*, 46 *N. Y.* 325, 7 *Am. Rep.* 341, and other cases above cited.

The delivery of stock certificates, endorsed in street form, usually comes within this rule, if they are sold or pledged to a bona fide purchaser for value, without notice of any defects in the title of the seller. This is not on the ground that such certificates are negotiable instruments, but on the ground of estoppel, based on the negligent or other acts of the real owner, which tend to mislead a bona fide purchaser or pledgee for value. *Baker v. Davie*, 211 *Mass.* 429, 97 *N. E.* 1094; *Russell v. American Bell Tel. Co.*, 180 *Mass.* 467, 62 *N. E.* 751; *National Safe Deposit Co. v. Hibbs*, 229 *U. S.* 391, 33 *S. Ct.* 818, 57 *L. Ed.* 1241.

The recognition of these general principles is merely the application to particular facts of the well settled equitable rule that "wherever one of two innocent persons must

suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." *Mears v. Waples,* 4 *Houst.* 62; see also, *McNeil v. Tenth Nat. Bank,* 46 *N. Y.* 325, 7 *Am. Rep.* 341.

Applying these principles to the facts of this case, the delivery by the Francis I. duPont Company of the certificates in question in street form to the Walls Company clothed that company with the apparent indicia of title to that stock, and thereby enabled it to mislead Laird & Company, an innocent party, who, acting in entire good faith, has parted with more than the value of the stock so delivered to it for sale. The equities of the case are, therefore, in favor of Laird & Company, though the Walls Company check for $25,650 was never paid. Laird & Company is, therefore, entitled to have issued and delivered to it certificates for the stock in question. It is, also, entitled to the unpaid dividends on that stock since September 27th, 1935.

Neither *Truxton v. Fait & Slagle Company,* 1 *Pennewill* 483, 42 *A.* 431, 73 *Am. St. Rep.* 81, nor any other case cited on behalf of Francis I. duPont & Co., is inconsistent with this conclusion.

It is true that in *Hunt, Receiver v. Drug, Inc.,* [5 *W. W. Harr.* (35 *Del.*) 332, 156 *A.* 384] the Superior Court held that a bona fide purchaser for value from a thief of a stock certificate, endorsed in blank, could not assert title to that certificate, where no negligence on the part of the real owner was shown. But that principle has no application to this case because the Francis I. duPont Company unquestionably delivered the certificates to the Walls Company.

A decree will be entered in accordance with this opinion.

Note. Before decree entered this opinion was modified in one particular. See *post p.* 250.