Pettingell, J.
Action of contract for money had and received. There was evidence that in 1934 the plaintiff *381 purchased from the administrator of an estate various shares of stock among which were one hundred shares of Bohemia Mining Company stock, represented by a certificate which was produced in court. The report does not state the name which appeared on the face of the certificate as that of the owner, but the certificate showed, as of December 22, 1916, an indorsement in blank by the defendant and by “Whittington & Company.” There was testimony, also, that, some time after 1934, the plaintiff learned that the defendant, in 1926, had received from the Bohemia Mining Company a “liquidation dividend” amounting to $215. After the plaintiff had demanded payment, and payment had been refused this action was brought to recover the amount of the “liquidation dividend.”
There was testimony by the defendant that in 1916 he had pledged the stock certificate in question to one Whittington, a broker, and that he had signed the certificate in blank, and had delivered it to Whittington as security, but that at no time had he ever sold the stock and that he had “treated it as his own.” There had been no transfer of this stock on the books of the corporation.
The defendant requested four rulings as follows: “1. On the evidence the court is warranted in finding for the defendant. 2. On the evidence the court is not warranted in finding for the plaintiff. 3. On the evidence the plaintiff’s claim is outlawed by the Statute of Limitations. 4. On the evidence the plaintiff has no enforceable cause of action against this defendant.”
These requests were denied. The trial judge made a finding of fact, the material part of which is as follows:
“In 1934, the stock in question was found among the assets in the estate of Herbert D. Allen, by his administrator, A. Farley Brewer, who sold it to this plaintiff, Edward S. Snow. Some time after the purchase, Mr. Snow learned of the payment of the dividend in 1926 *382 to this defendant. He thereupon brought suit to recover the amount paid the defendant, namely $215.00. I find as a fact that, at the time that the defendant received this dividend, he was not legally entitled to it, and that it was his duty to return the check to the corporation and notify the corporation that he no longer owned the stock. The defendant, having neglected this duty, I find that the Statute of Limitations did not run against the owner of the stock, he not having knowledge of the payment of this dividend until 1937. I, therefore, find for the plaintiff in the sum of $215.00 with interest from the date of writ.”
If the dividend sued for 'had been an ordinary dividend the plaintiff would not be entitled to recover it because it was declared before he, in any sense of the word, became an owner of the stock. Dividends, ordinarily, belong to the owner of the stock at the time the dividend is declared. The right of the stockholder becomes fixed by the declaration of the dividend by the corporation. Nutter v. Andrews, 246 Mass. 224, at 227, 228. Ward v. Blake, 247 Mass. 430, at 433. The general rule is stated in 60 A. L. R. 702 N. See, also, Stuart v.. Sargent, 283 Mass. 536, at 539, 540, 542.
This dividend, 'however, appears not to be an ordinary dividend. It is referred to in the report as a “liquidation dividend.” No further explanation of it is given. “No dividends rightly could be declared by a corporation in financial distress, destitute of surplus or net profits.” Willson v. Laconia Car Co., 275 Mass. 435, at 441, and we assume from the use of the word “liquidation” that the payment was not a dividend at all but a pro rata distribution of the capital of the corporation in the course of the winding up of its affairs. This suit, therefore, is not an action by a stockholder to recover a dividend paid by mistake to the defendant but an action in which t'he plaintiff seeks to recover the distribution due him, as a stockholder, *383 of Ms proportionate part of the net capital of the corporation. Provided that he conld establish Ms title to the stock, he was entitled to recover the payment although it 'had been made before he acquired his title, provided, also, that the statute of limitations was not a bar to the action. Unless thus barred, as the owner of the stock certificate he was entitled to recover the part of the capital allotted to the stock, represented by the certificate, in the distribution of the capital assets.
By indorsing the stock certificate in blank and delivering it to Whittington, the defendant estopped himself to claim title as against the plaintiff, a purchaser in good faith for value.
“The principle of law established by these cases is that if the owner of stock knowingly places in the hands of another the certificate therefor, either indorsed in blank or by a separate instrument of transfer and power of attorney, the person to whom the certificate and instrument are delivered can pass a good title by delivery or pledge regardless of the relations between him and the owner. 'This is not on the ground that the certificate becomes a negotiable instrument but on the ground of estoppel, because the owner, having given another such indicia of title as clothes him with the appearance of ownership, is precluded from setting up title in himself as against a holder in good faith.” Baker v. Davie, 211 Mass. 429, at 436.
See, also, Scollans v. Rollins, 179 Mass. 346, at 352, 353. Russell v. American Bell Tel. Co., 180 Mass. 467, at 469, 470. Gurley v. Reed, 190 Mass. 509, at 512.
The defendant, therefore, is estopped to deny the plaintiff’s title, and the payment received by the defendant being a portion of the capital investment represented by the certificate held by the plaintiff, the defendant could not successfully hold it against the plaintiff if the plaintiff’s action is not barred by the statute of limitations.
*384 The issue as to this part of the ease is whether there has been a fraudulent concealment of the cause of action by the defendant. He received the payment in 1926, the plaintiff demanded it “some time after 1934.” Under G. L. (Ter. Ed.) C. 260, Section 12, the statute does not begin to run, where there is fraudulent concealment of the cause of action, until the plaintiff ’s discovery of the cause of action.
In the case at bar, the facts, taldng them in the most advantageous light for the plaintiff, are, that, in 1926, the defendant received a payment which belonged to some other person; that in 1934, the plaintiff acquired the right of that person; that the plaintiff subsequently demanded payment which was refused: Other than the demand for payment and the refusal there is nothing to show that the plaintiff or the defendant ever had any dealings with each other or even knew of each other. Nor is there anything in the report to show any dealings on the part of the defendant with any predecessor in title of the plaintiff.
“The fraud which conceals a cause of action within the meaning of the statute ‘Must be actually accomplished by positive acts done with the intention to deceive’ * * # The character of the fraud which accompanies such concealment has been described as ‘active steps taken’ by the defendant * * * ‘Positive acts of actual and not merely con-' struetive concealment’ # * * ‘active fraud of a kind calculated to conceal the truth from the plaintiff.’ * * *” Connelly v. Bartlett, 286 Mass. 311, at 318, 319.
“The rule that fraud cannot be presumed applies to a charge of fraudulent concealment of a cause of action.” Maloney v. Brackett, 275 Mass. 479, at 484.
Mere silence on the part of a defendant, where there is no fiduciary relation, does not constitute fraudulent concealment. O'Brien v. Sherry, 222 Mass. 147, at 150. Ca *385 pucci v. Barone, 266 Mass. 578, at 581. Connelly v. Bartlett, 286 Mass. 311, at 318. In the case at bar, there is an entire absence of evidence which would warrant a finding of a fiduciary relationship on the part of the defendant with the plaintiff or with any other person.
The ignorance of the plaintiff of his cause of action, or of his rights, under the law is not a factor in fraudulent concealment. Nichols v. Pope, 287 Mass. 244, at 247. Norwood Trust Co. v. Twenty-four Federal Street Corp., 295 Mass. 234, at 237. This is especially true where the defendant, in the exercise of ordinary diligence, might have discovered his cause of action. Nudd v. Hamblin, 8 Allen 130, at 134. Wells v. Child, 12 Allen 333, at 335. Sykes v. Meacham, 103 Mass. 285, at 286. Atlantic National Bank v. Harris, 118 Mass. 147, at 153. Estabrook v. Moulton, 223 Mass. 359, at 360.
Where money is paid under a mutual mistake of fact, and there is no evidence of fraud, the statute begins to run at once. State National Bank v. Beacon Trust Co., 267 Mass. 355, at 360. This is so “even though the mistake was then undiscovered. Sturgis v. Preston, 134 Mass. 372.” * * * Stoneham Five Cents Savings Bank v. Johnson, 295 Mass. 390, at 395.
There is nothing in the case which makes G. L. (Ter. Ed.) C. 260, Section 12, applicable, and it was prejudicial error to deny the defendant’s four requested rulings. As the giving of the second and third would have required the trial judge to find for the defendant, the finding for the plaintiff is to be vacated and judgment is to be entered for the defendant.