JOHN B. NELSON, PLAINTIFF-APPELLANT, v. LEON
WOLF, DEFENDANT-RESPONDENT.

Argued January 23, 1950—Decided February 20, 1950.

*Mr. Frank P. Mulligan* argued the cause for the appellant (*Messrs. Kirkman, Mulligan & Harris,* attorneys).

*Mr. William Charlton* argued the cause for the respondent (*Mr. Emory J. Kiess,* attorney).

The opinion of the court was delivered by

VANDERBILT, C. J.    From a directed verdict in favor of the defendant in the Law Division of the Superior Court for Atlantic County the plaintiff appealed to the Appellate Division and we certified the case here on our own motion.

On June 6, 1947, defendant consigned a diamond ring valued at $3,500 to Brand, Inc., a dealer in jewelry with a place of business located on the Boardwalk in Atlantic City where it sold jewelry and other merchandise to the public both at auction and private sale.    The agreement of consignment provided as follows:

"The goods described and valued as below are delivered to you for examination and inspection only and remain the property of *Lee Wolf* and are to be returned on demand.    Such merchandise, until returned and actually received, are at your risk from all hazards.    No right or power is given to you to sell, pledge, hypothecate or otherwise dispose of this merchandise regardless of prior transactions.    A sale of this merchandise can only be effected and title will pass only if, as and when *Lee Wolf* shall agree to such sale and a bill of sale rendered therefor."

On October 29, 1947, Brand, Inc., borrowed $4,000 from the plaintiff and delivered to him the ring in question together with two other pieces of jewelry as collateral security for the payment of the loan.    The circumstances of the loan and the prior dealings of the parties are described by the plaintiff as follows:

"Mr. Harold Brand called me on the telephone and advised me that he was in need of some money and he would like to borrow from me four or five thousand dollars.    I told Mr. Brand that I didn't feel inclined to loan him any money because I had certain other

business transactions with him on which he was not keeping his word. One of those transactions was a check of a thousand dollars that I had just received from him a few days previous and his check had been returned from the bank 'Insufficient Funds.' Mr. Brand said that he would send to me a considerable amount of jewelry if I were to loan him four or five thousand dollars, and I hold this jewelry as collateral until the loan was repaid. In addition to that he said that the check of a thousand dollars that had just been returned and had been marked 'Insufficient Funds' was a mistake and that he would send with his representative who was bringing the collateral if I would make the loan, one thousand dollars in cash, plus a few dollars protest fees, so that the obligation would have been satisfied."

Thereafter the plaintiff delivered one of the three hypothecated pieces of jewelry to a third party, Marinus, in return for a $3,000 note of Marinus; whether the transaction was one of sale and purchase or a mere loan and hypothecation is not made clear in the testimony. The plaintiff testified that he subsequently purchased the ring from Brand, Inc., in consideration of the cancellation of the $4,000 loan, but no bill of sale was ever given him for the ring nor was the transaction otherwise evidenced in writing.

Thereafter the plaintiff redelivered the ring to Brand, Inc., under a consignment agreement dated November 26, 1947, and signed by Brand, Inc., the pertinent provision of which reads as follows:

"The property described herein is received by the undersigned at the risk of the undersigned for inspection only with the understanding that title is to remain in 'John Nelson' and that the undersigned will return the said property on demand. Before any sale can take place and title pass, any selection made by the undersigned must be approved by said 'John Nelson' and a bill of sale rendered therefor. It being the understanding herein that in the event said property is damaged, lost, stolen or destroyed before such sale, that the undersigned will be responsible therefor, whether caused by the undersigned or by another over whom the undersigned has no control, and whether the undersigned or such other is negligent or not; and in the event that undersigned fails to return said property upon demand, the undersigned will pay the said stated value appearing herein, which is the agreed value, to the said 'John Nelson.' "

This document was a printed form of Brand, Inc., on which the name of the plaintiff was interlined three times in place

of "Brand, Incorporated." The third piece of jewelry was returned at the same time by the plaintiff to Brand, Inc., under circumstances which are nowhere explained.

On January 26, 1948, the defendant made a demand on Brand, Inc., for the return of the ring, which Brand, Inc., forthwith delivered to him without question.

At the time of the foregoing transactions neither plaintiff nor defendant had knowledge of the transactions of the other with Brand, Inc.

In November, 1948, the plaintiff demanded of the defendant the delivery of the ring and, being refused by the defendant, he brought this action to recover the value thereof on the theory of wrongful conversion. After the plaintiff had presented his evidence, the defendant moved for a directed verdict on the ground that the defendant had placed the ring in question with Brand, Inc., for inspection and on consignment, that Brand, Inc., could not pass title to it, and that the defendant never did pass title to it. The court granted the defendant's motion for a directed verdict and from the judgment entered thereon the plaintiff has appealed.

The defendant is entitled to the ring unless the plaintiff may invoke an estoppel against him. This the plaintiff attempts to do on the strength of the following provision of the Uniform Sales Act:

"*R. S.* 46:30–29. Sale by nonowner.

"(1) Subject to the provision of this chapter, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell."

There are no decisions in New Jersey construing this particular section of the Uniform Sales Act, but it has become well established in other jurisdictions that have adopted the Act that, although possession alone is not enough to create an estoppel, the owner may be estopped from setting up his own title and the lack of title in the vendor as against a *bona*

*fide* purchaser for value where the owner has clothed the vendor with possession and other indicia of title, 46 *Am. Jur., Sales,* § 463.

The plaintiff takes the position that where a person to whom goods are delivered is in the business of selling such goods, the mere delivery of the goods to him is sufficient to permit him to convey good title to an innocent purchaser for value and for this proposition he cites *Winakur v. Sapourn,* 156 *Md.* 622, 145 *A.* 342 (*Ct. of App.* 1929) ; *Glass v. Continental Guaranty Corp.,* 81 *Fla.* 687, 88 *So.* 876 (*Sup. Ct.* 1921) ; and *Handy v. C. I. T. Corp.,* 291 *Mass.* 157, 197 *N. E.* 64 (*Sup. Jud. Ct.* 1935). In each of these cases, however, there were additional indicia of title beyond the mere delivery of possession to the dealer and the fact that he was engaged in the business of selling such goods. Thus, in the *Winakur case* the automobile was registered in the dealer's name with the commissioner of motor vehicles so that the dealer was enabled to obtain a duplicate certificate of title and deliver it to the purchaser. In the *Glass case* the dealer was given a bill of lading by the finance company, thus leading an innocent purchaser for value to believe that the dealer had title. And so in the *Handy case* an automobile dealer in the possession of a car under a trust receipt was held able to give title to an innocent purchaser for value, the court relying on the provision in the Factor's Act, *G. L.* (*Ter. Ed.*), *c.* 104, § 1: "A factor or other agent intrusted with the possession of merchandise * * * *with authority to sell* the same shall be deemed [to be] the true owner of such merchandise, so far as to give validity to any *bona fide* contract of sale made by him," and Section 194 of the Restatement of the Law of Agency: "A general agent for an undisclosed principal authorized to conduct transactions subjects his principal to liability for acts done on his account, if usual or necessary in such transactions, although forbidden by the principal to do them." In the instant case, however, Brand, Inc., had no actual authority to sell, as the agreement of consignment clearly demonstrates, and no apparent authority to sell, unless it be to an innocent purchaser in the regular course

of business. The plaintiff in the instant case is clearly not such a *bona fide* purchaser in the regular course of business. The previous transactions of Brand, Inc., with the plaintiff, as we have seen, have been unsatisfactory and irregular; the third piece of jewelry involved in the plaintiff's loan to Brand, Inc., has not been explained or accounted for; and the plaintiff never received any bill of sale or other written evidence of the purchase of the ring by him. He was not the type of customer who came into the shop of Brand, Inc., in the ordinary course of business. It is worth noting, moreover, that in the *Handy case* the court laid stress on the fact that the plaintiffs had not known the dealer and had not had business transactions with him before the case arose, whereas in the instant transaction the plaintiff had not only had dealings with Brand, Inc., but unsatisfactory ones, and accordingly he was put on notice that the title of Brand, Inc., might be questionable.

Also relied upon by the plaintiff is the case of *Finance Corporation of New Jersey v. Jones,* 98 *N. J. L.* 165 (*E. & A.* 1922), decided under the Uniform Conditional Sales Act, *R. S.* 46:32–12, which provides:

"When goods are delivered under a conditional sale contract and the seller *expressly or impliedly consents* that the buyer may resell them prior to performance of the condition, the reservation of property shall be void against purchasers from the buyer for value *in the ordinary course of business,* and as to them the buyer shall be deemed the owner of the goods, even though the contract or a copy thereof shall be filed according to the provisions of this chapter."

In that case the sale was made to an innocent purchaser for value in the ordinary course of business by a dealer with express or implied consent to sell and the statutory requirements were thereby met. In the instant case, however, it has already been demonstrated that the sale of the ring to the plaintiff was not only most unusual and not in the ordinary course of business but also was made without the defendant's consent. Therefore, to concede the plaintiff his argument that the above provisions of the Uniform Conditional Sales Act are analogous to the provisions of the Uni-

form Sales Act here applicable only serves to further establish the weakness of his position.

The only other case cited by the plaintiff is *DuPont v. Laird*, 24 *Del. Ch.* 152, 8 *A.* 2d 162 (*Del. Ch.* 1939); modified, 24 *Del. Ch.* 250, 9 *A.* 2d 76 (*Del. Ch.* 1939), and it is not at all in point. In that case the vendee of certain stock certificates acquired title, albeit a voidable title, by reason of his fraud in giving a bad check for the certificates, and, having title, he passed it on to an innocent third party for value. In the instant case actual title never passed to Brand, Inc.

From the foregoing it is apparent that there is no evidence from which an estoppel against the defendant in favor of the plaintiff may be legitimately inferred, and accordingly the judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.